IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (SPRINGFIELD)

ACCESS 4 ALL, INC.,
a Florida not-for-profit corporation,
and FELIX ESPOSITO, individually,

                                            CIVIL ACTION NO.: 1:04-cv-12347 (MAP)

       Plaintiffs,

v.

DELANCEY CLINTON ASSOCIATES, L.P.,
a Pennsylvania Limited Partnership,

       Defendant.
_____/

## PLAINTIFFS' AMENDED RULE 26 (a)(2) EXPERT WITNESS DISCLOSURE

Plaintiffs, ACCESS 4 ALL, INC., a Not-For-Profit Corporation, and FELIX ESPOSITO, Individually, by and through undersigned counsel, file their Expert Witness Disclosures pursuant to Rule 26 (a)(2) of the Federal Rules of Civil Procedure and in compliance with this Court's Scheduling Order dated July 20, 2005.

The following individuals have been retained by the Plaintiff to provide expert testimony in the above matter.

1.        Mr. Peter Spalluto
        Access-Ability, Inc.
        610 E. Sample Road
        Pompano Beach, FL 33064
        Tel. 954-942-1882

Mr. Spalluto will testify as the Plaintiffs' expert on Title III of the Americans with Disabilities Act ("ADA"), its regulations and guidelines, and their application to the facilities and businesses that are the subject of the instant lawsuit. Mr. Spalluto's primary role is to provide testimony regarding the substance and application of the ADA regulations and accessibility guidelines to the subject facilities, and the costs to remedy the ADA violations.

The subject matter of his opinion testimony will be to identify the ADA violations referred to in the Complaint, Initial Report and the Final Report.  The Initial Report of the violations existing on the property is attached hereto as <u>Exhibit A</u>, pursuant to Fed.R.Civ.P. 26(a)(2)(B). The Final Report, following an inspection of the property under Rule 34 Fed.R.Civ.P., and signed by Mr. Spalluto and Mr. Baez, is attached hereto as <u>Exhibit B</u>. Mr. Spalluto's qualifications  are attached hereto as <u>Exhibit C-1</u>, pursuant to Fed.R.Civ.P.26(a)(2)(B).

Mr. Spalluto may also provide rebuttal testimony to that provided by Defendant's experts.

2.    Pablo Baez
3732 NW 23 Manor
Coconut Creek, FL 33066

Mr. Baez will testify as the Plaintiffs' expert on Title III of the ADA, its regulations and guidelines, and their application to the facilities and business that are the subject of the instant lawsuit. Mr. Baez's primary role is to provide testimony regarding the specific ADA violations at Defendant's facility, the ADA regulations and accessibility guidelines to the subject facilities, and the costs to remedy the ADA violations. The subject matter of his opinion testimony will be to identify the ADA violations referred to in the Complaint, Initial Report and the Final Report. The Initial Report of the violations existing on the property is attached hereto as <u>Exhibit A</u>, pursuant to Fed.R.Civ.P. 26(a)(2)(B). The Final Report, following an inspection of the property under Rule 34 Fed.R.Civ.P., signed by Mr. Spalluto and Mr. Baez, is attached hereto as <u>Exhibit B</u>.  Mr. Baez's qualifications  are attached hereto as <u>Exhibit C-2</u>, pursuant to Fed.R.Civ.P.26(a)(2)(B).

Mr. Baez may also provide rebuttal testimony to that provided by Defendant's

experts.

3.          Mr. Herbert Neff
            2500 North Federal Highway #223
            Boca Raton, FL 33431

Herbert Neff is a licensed contractor and is expected to testify as to opinions and

methods that are available for modifications and/or removal of barriers at the facility for

the Defendant to bring the property into ADA compliance, and the costs to remedy the ADA

violations. Mr. Neff's qualifications are attached hereto as <u>Exhibit C-3</u>, pursuant to

Fed.R.Civ.P.26(a)(2)(B).

Mr. Neff may also provide rebuttal testimony to that provided by Defendant's

experts.

4.          Gary W. Dix, C.P.A., C.V.A
            Mallah, Furman & Company, P.A.
            1001 South Bayshore Drive, Suite 1400
            Miami, Florida 33131

Gary Dix is a licensed, certified public accountant and is expected to testify as to the

financial ability of the Defendant to bring the property into ADA compliance. Mr. Dix's

qualifications are attached hereto as <u>Exhibit C-4</u>, pursuant to Fed.R.Civ.P.26(a)(2)(B).

Mr. Dix may also provide rebuttal testimony to that provided by Defendant's experts.

Plaintiffs reserve the right to supplement their Amended List depending upon the

reports and/or deposition testimony of Defendant's Expert or Fact Witnesses, to the extent

allowed by the Court and the applicable rules.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic filing, this 1st day of September, 2005, to:

Michael Colgan Harrington, Esq.
Murtha Cullina, LLP
185 Asylym Street, CityPlace I
Hartford, CT 06103-3469
Tel.: (860)240-6000; Fax: (860)240-6150

*The Plaintiff by his Attorney:*

**FULLER, FULLER & ASSOCIATES, P.A.**
12000 Biscayne Blvd., Suite 609
North Miami FL 33181
Tel.: (305)891-5199; Fax: (305)893-9505
FFA@fullerfuller.com

By:   /s/ John Fuller
John P. Fuller, Esq., *Pro Hac Vice*
FL Bar No. 0276847

JPF:jl

*3638-MA* Witness List (an Amended Rule 26a2)  (jl 9-1-05).wpd

# *ACCESS-ABILITY, INC.*

610 E. Sample Road, Pompano Beach, FL  33064
VOICE:  (954) 942-1882  FAX:  (954) 781-1282
CGC#:  051895   FED ID#:  650386560
*www.access-ability.com*

September 15, 2004

Fuller, Fuller & Associates
12000 Biscayne Blvd
North Miami, Fl.  33181

Re:  Holiday Inn
      711 Dwight Street
      Springfield, MA 01104

Dear Mr. Fuller,

Access 4 All, Inc. has requested that an investigative report on ADA violations for the above-referenced property be sent to you.  Obvious areas of non-compliance exist.  We observed and noted the following:

**<u>Parking</u>**

1.      In this parking area, there are an insufficient number of spaces designated for disabled use, violating Sections 4.1.2 and 4.6.1 of the ADAAG.

2.      The disabled use spaces do not have clear and level access aisles provided, violating Sections 4.1.2 and 4.6.3 of the ADAAG.

3.      There is no accessible route from the parking areas to the facility, in violation of Sections 4.3.2, 4.6.2 and 4.6.3 of the ADAAG.

4.      There are no signs designating the disabled use spaces, in violation of Section 4.6.4 of the ADAAG.

5.      The ramps provided from the parking areas to the facility have slopes, side-slopes and/or cross-slopes in excess of the limits prescribed in Section 4.8 of the ADAAG.

6.      The accessible parking spaces are improperly dispersed and marked as per US Code 23, Section 109D (striped in white and prominently outlined in blue), and in violation of Section 4.6.2 of the ADAAG.

**Entrance Access and Path of Travel**

7.     There are ramps at the facility that do not have level landings and/or contain excessive slopes, side slopes or cross slopes in violation of Sections 4.8.2, 4.8.4 and 4.8.6 of the ADAAG.

8.     There are rises at the thresholds of entrances at the facility in excess of ¾ of an inch, violating Sections 4.5.2 and 4.13.8 of the ADAAG.

9.     There are interior doors at several of the building with excessive force required for opening at the facility, in violation of Section 4.13.11 of the ADAAG.

10.     There are stairs provided at the facility that do not comply with the standards prescribed in Section 4.9 of the ADAAG.

11.     There are elevators provided at the facility that do not comply with the standards prescribed in Section 4.10 of the ADAAG.

**Access to Goods and Services**

12.     There are protruding objects present throughout the facility, in violation of Section 4.4 of the ADAAG.

13.     Several public telephones throughout the facility do not provide the prescribed volume control device and/or clear floor space for disabled patrons, in violation of Sections 4.31.1 and 4.31.2 of the ADAAG.

14.     There are counters throughout the facility in excess of 36", in violation of Section 7.2(1) of the ADAAG.

**Accessible Guest Rooms**

15.     The rooms designated for disabled use do not provide a 36-inch clear floor space on            both sides of the bed in violation of Section 9 of the ADAAG.

16.     The bed(s) provided are not on above ground frames as required in Section 9 of the ADAAG.

17.     There are areas for storage provided without the clear floor space prescribed in Sections 4.2 and 9 of the ADAAG.

18.     The rooms for disabled use provide elements with controls/dispensers outside of the required ranges violating Sections 4.2 of the ADAAG.

19.     The rooms for disabled use are not equipped with proper door hardware violating Sections 4.13.9 and 9 of the ADAAG.

20.     There are an insufficient amount of compliant disabled guest rooms available violating several sections of the ADAAG.

21.     The rooms designated for disabled use do not provide a roll-in shower for use by the
        disabled, violating Section 9 of the ADAAG.


**Indoor Pool**

22.     There is no water access for a wheelchair user in violation of Section 9.1.1 of the ADAAG

**Outdoor Pool**

23.     There is no water access for a wheelchair user in violation of Section 9.1.1 of the ADAAG

24.     The gate to gain entry to the pool area is not operable with a closed fist in violation of Section 4.13.9 of the ADAAG.


A more detailed follow up report should be performed in the presence of the property owner or manager.  There may be other violations of the Americans with Disabilities Act that may be revealed in said inspection.

# *ACCESS-ABILITY, INC.*

*610 E. Sample Road, Pompano Beach, FL  33064*
*VOICE: (954) 942-1882  FAX: (954) 781-1282*
*CGC#: 051895  FED ID#: 650386560*
*www.access-ability.com*

August 11, 2005
Fuller, Fuller & Associates
12000 Biscayne Blvd
North Miami, FL  33181

Re:    Holiday Inn
       711 Dwight Street
       Springfield, MA 01104

On Friday, August 5, 2005, an ADA (Americans with Disabilities Act) compliance inspection was conducted at the Holiday Inn hotel in Springfield, Massachusetts. In attendance, plaintiff's expert Pablo Baez and plaintiff's attorney John Fuller. Representatives for the property included Michael C. Harrington of Murtha Cullina LLP and Andy Taymans.

## Applicable ADAAG Standard

The Holiday Inn hotel in Springfield, Massachusetts is an existing facility as defined in the Department of Justice's ADA Title III Regulation 28 CFR Part 36 Sec. 36.401. This facility is covered by the Department of Justice's ADA Title III Regulation 28 CFR Part 36 Section 36.304 governing the removal of architectural barriers in existing facilities. Being an existing facility does not exempt the hotel from barrier removal requirements under the ADAAG (Americans with Disabilities Act Accessibility Guidelines). Barrier removal must be strictly adhered to in order to promulgate a "barrier free society".

## Sec. 36.304 Removal of barriers.

(a) General. A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

(b) Examples of steps to remove barriers include, but are not limited to, the following actions --

(1) Installing ramps;

(2) Making curb cuts in sidewalks and entrances;

(3) Repositioning shelves;

(4) Rearranging tables, chairs, vending machines, display racks, and other furniture;

(5) Repositioning telephones;

(6) Adding raised markings on elevator control buttons;

(7) Installing flashing alarm lights;

(8) Widening doors;

(9) Installing offset hinges to widen doorways;

(10) Eliminating a turnstile or providing an alternative accessible path;

(11) Installing accessible door hardware;

(12) Installing grab bars in toilet stalls;

(13) Rearranging toilet partitions to increase maneuvering space;

(14) Insulating lavatory pipes under sinks to prevent burns;

(15) Installing a raised toilet seat;

(16) Installing a full-length bathroom mirror;

(17) Repositioning the paper towel dispenser in a bathroom;

(18) Creating designated accessible parking spaces;

(19) Installing an accessible paper cup dispenser at an existing inaccessible water fountain;

(20) Removing high pile, low density carpeting; or

(21) Installing vehicle hand controls.

(c) Priorities. A public accommodation is urged to take measures to comply with the barrier removal requirements of this section in accordance with the following order of priorities.

(1) First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These

2

measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces.

(2) Second, a public accommodation should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables, providing Brailled and raised character signage, widening doors, providing visual alarms, and installing ramps.

(3) Third, a public accommodation should take measures to provide access to restroom facilities. These measures include, for example, removal of obstructing furniture or vending machines, widening of doors, installation of ramps, providing accessible signage, widening of toilet stalls, and installation of grab bars.

(4) Fourth, a public accommodation should take any other measures necessary to provide access to the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

Two tax incentives are available to businesses to help cover the cost of making access improvements. The first is a tax credit which can be used for architectural adaptations, equipment acquisitions, and services such as sign language interpreters. The second is a tax deduction which can be used for architectural or transportation adaptations. Consult with your tax advisor.

## Tax Credit

The tax credit, established under Section 44 of the Internal Revenue Code, was created in 1990 specifically to help small businesses cover ADA-related eligible access expenditures. A business that for the previous tax year had either revenues of $1,000,000 or less or 30 or fewer full-time workers may take advantage of this credit. The credit can be used to cover a variety of expenditures, including:

- provision of readers for customers or employees with visual disabilities
- provision of sign language interpreters
- purchase of adaptive equipment
- production of accessible formats of printed materials (i.e., Braille, large print, audio tape, computer diskette)
- removal of architectural barriers in facilities or vehicles (alterations must comply with applicable accessibility standards)
- fees for consulting services (under certain circumstances)

Note that the credit cannot be used for the costs of new construction. It can be used only for adaptations to existing facilities that are required to comply with the ADA.

The amount of the tax credit is equal to 50% of the eligible access expenditures in a year, up to a maximum expenditure of $10,250. There is no credit for the first $250 of expenditures. The maximum tax credit, therefore, is $5,000.

## Tax Deduction

The tax deduction, established under Section 190 of the Internal Revenue Code, is now a maximum of $15,000 per year a reduction from the $35,000 that was available through December 31, 1990. A business (including active ownership of an apartment building) of any size may use this deduction for the removal of architectural or transportation barriers. The renovations under Section 190 must comply with applicable accessibility standards.

Small businesses can use these incentives in combination if the expenditures incurred qualify under both Section 44 and Section 190. For example, a small business that spends $20,000 for access adaptations may take a tax credit of $5000 (based on $10,250 of expenditures), and a deduction of $15,000. The deduction is equal to the difference between the total expenditures and the amount of the credit claimed.

**Example:** A small business' use of both tax credit and tax deduction

$20,000 cost of access improvements (rest room, ramp, 3 doors widened)

- $5,000 maximum credit

$15,000 remaining for deduction

(NOTE: A tax credit is subtracted from your tax liability after you calculate your taxes, while a tax deduction is subtracted from your total income before taxes, to establish your taxable income.)

This report was prepared following a rule 34 inspection and is organized in the following manner;

1. **Black** is the text of the area inspected and the corresponding ADAAG section violated.
2. ***Red and Black italics*** denote the ADAAG section cited as not compliant followed with pictures showing the violation.
3. ***Blue*** denotes the suggested recommended action in order to correct the violation.
4. **Green** denotes policy and procedure recommendations.

The facility currently contains barriers to access, which we have noted in the following areas:

## I. PARKING AND PASSENGER LOADING ZONE

**There are 270 parking spaces. 7 parking spaces are required to be designated as accessible with at least 1 of these required to be designated as "van accessible".**

A.    **There are 5 designated accessible spaces. There are an insufficient amount of accessible parking spaces violating sections 4.1.2(5)(a) and 4.6.1 of the ADAAG.**

B.    **The signage designating accessible parking spaces is not posted at a sufficient height violating section 4.6.4 of the ADAAG.**

C.    **There is no signage designating a "van accessible" parking space violating sections 4.1.2(5)(b) and 4.6.4 of the ADAAG.**

D.    **There are designated accessible parking spaces which are not properly marked and without access aisles violating section 4.6.3 of the ADAAG. There are obstructions (posted sign, benches) in the path of an access aisle violating section 4.6.3 of the ADAAG. There is a parking space, with a sign on a post designating it as an accessible parking space, which has no access aisle and is not properly marked also violating section 4.6.3 of the ADAAG.**



*ADAAG Section 4.1.2(5)(a) If parking spaces are provided for self-parking by employees or visitors, or both, then accessible spaces complying with 4.6 shall be provided in each such parking area in conformance with the table below. Spaces required by the table need not be provided in the particular lot. They may be provided in a different location if*

*equivalent or greater accessibility, in terms of distance from an accessible entrance, cost and convenience is ensured.*

| Total Parking in Lot | Required Minimum Number of Accessible Spaces |
|---|---|
| 1 to 25 | 1 |
| 26 to 50 | 2 |
| 51 to 75 | 3 |
| 76 to 100 | 4 |
| 101 to 150 | 5 |
| 151 to 200 | 6 |
| *201 to 300* | *7* |

*Except as provided in (b), access aisles adjacent to accessible spaces shall be 60 in (1525 mm) wide minimum.*

**ADAAG Section 4.1.2(5)(b)** *One in every eight accessible spaces, but not less than one, shall be served by an access aisle 96 in (2440 mm) wide minimum and shall be designated "van accessible" as required by 4.6.4. The vertical clearance at such spaces shall comply with 4.6.5. All such spaces may be grouped on one level of a parking structure.*

**ADAAG Section 4.6.1 Minimum Number.** *Parking spaces required to be accessible by 4.1 shall comply with 4.6.2 through 4.6.5. Passenger loading zones required to be accessible by 4.1 shall comply with 4.6.5 and 4.6.6.*

**ADAAG Section 4.6.3 Parking Spaces. Accessible parking spaces shall be at least 96 in (2440 mm) wide. Parking access aisles shall be part of an accessible route to the building or facility entrance and shall comply with 4.3. Two accessible parking spaces may share a common access aisle (see Fig. 9).** *Parked vehicle overhangs shall not reduce the clear width of an accessible route. Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions.*



**Figure 9**
**Dimensions of Parking Spaces**

The access aisle shall be a minimum of 60 inches (1525 mm) wide for cars or a minimum of 96 inches (2440 mm) wide for vans. The accessible route connected to the access aisle at the front of the parking spaces shall be a minimum of 36 inches (915 mm).

*ADAAG Section 4.6.4 Signage. Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility (see 4.30.7). **Spaces complying with 4.1.2(5)(b) shall have an additional sign "Van-Accessible" mounted below the symbol of accessibility. Such signs shall be located so they cannot be obscured by a vehicle parked in the space.***

**Recommendations**

*Seven (7) accessible parking spaces are required, one (1) of these is required to be designated as "van accessible". The existing designated accessible spaces need to be re-striped. The posted sign at the stand-alone designated accessible parking space*



*on the east side of the facility should be removed since it is not striped and has no access aisle. Since there is an insufficient amount of accessible parking spaces a solution would be to maintain the 2 existing parking spaces nearest to the east entrance. These spaces should be re-striped with a shared access aisle between them. Neither signage nor any other obstruction should be in the path from the access aisle toward the east entrance door. The remaining 5 accessible parking spaces, including the van accessible space, should be striped in the parking area closest to the main entrance. Provide an adjacent access aisle for each parking space that is at least 60 inches wide.*

*Ensure that the van accessible space is a minimum of 96 inches wide and served by an access aisle at least 96 inches wide. At the van accessible space, provide an additional "Van-Accessible" sign located below the International Symbol of Accessibility. The "Van-Accessible" designation is meant to be informative, not restrictive, in the use of van spaces. Signage at a height of at least 60 inches (measured to the bottom edge) is generally advisable (taking care not to make the sign a protruding object), although a higher height is better for signs at van spaces.*

*Ensure that all spaces and access aisles for persons with disabilities are flat and level, with slopes and cross-slopes not exceeding 1:50 in all. The access aisles should lead to a crosswalk which should then lead to a curb cut located at the end of the passenger loading zone.*



ADAAG specifies the sign content and symbol/field contrast (light-on-dark or dark-on-light), but not the color or size, which may be addressed by local jurisdictions. Additional signage can clarify this, which may be important in lots with only one accessible space since that space must be a van space.

The method and color of striping is not specified in ADAAG but may be addressed by local code. Access symbols on the parking surface, sometimes required locally, are obscured by vehicles parked in the space and cannot substitute for post- or wall-mounted signage. Since van access aisles can be as wide as spaces, it is important that they be clearly marked (diagonal striping is often used). Bollards or other barriers can help prevent misuse of the aisle as a space provided that they do not obstruct the connecting accessible route.

An essential consideration for any design is having the access aisle level with the parking space. Since a person with a disability, using a lift or ramp, must maneuver within the access aisle, the aisle cannot include a ramp or sloped area. The access aisle must be connected to an accessible route to the appropriate accessible entrance of a building or facility. The parking access aisle must either blend with the accessible route or have a curb ramp complying with 4.7. Such a curb ramp opening must be located within the access aisle boundaries, not within the parking space boundaries. Also, the required dimensions of the access aisle cannot be restricted by planters, curbs or wheel stops. Connecting accessible routes should be configured so that people using wheelchairs, which may not be as visible to drivers backing out of spaces, do not have to travel behind other vehicles.

## II.  EXTERIOR ACCESSIBLE ROUTES

A.  There are 2 curb ramps located adjacent to the pool and the east side parking spaces. The slopes and cross slopes of these curb ramps are in excess of the requirements in sections 4.7.2 and 4.8.2 of the ADAAG. These curb ramps and the curb ramp located at the area of the passenger loading zone, near the front entrance, are chipped and lack a smooth transition from the street to the sidewalk violating sections 4.7.4 and 4.5.1 of the ADAAG.

B.  The ramps lack detectable warnings violating section 4.7.7 of the ADAAG.

8



C.  Both sets of doors at the east side entrance have hardware which is not easy to open with a closed fist violating section 4.13.9 of the ADAAG. Neither set of double-leaf doors provide the required 32 inches of clear width when opened violating sections 4.13.4 and 4.13.5 of the ADAAG.

  

*ADAAG Section 4.7 Curb Ramps.*

*4.7.1 Location. Curb ramps complying with 4.7 shall be provided wherever an accessible route crosses a curb.*

*4.7.2 Slope. Slopes of curb ramps shall comply with 4.8.2. Transitions from ramps to walks, gutters, or streets shall be flush and free of abrupt changes. Maximum slopes of adjoining gutters, road surface immediately adjacent to the curb ramp, or accessible route shall not exceed 1:20.*

*4.7.4 Surface. Surfaces of curb ramps shall comply with 4.5*

*4.7.7 Detectable Warnings. A curb ramp shall have a detectable warning complying with 4.29.2. The detectable warning shall extend the full width and depth of the curb ramp.*

*ADAAG Section 4.5.1 General. Ground and floor surfaces along accessible routes and in accessible rooms and spaces including floors, walks, ramps, stairs, and curb ramps, shall be stable, firm, slip-resistant, and shall comply with 4.5.*



| | **Figure 12(a)**<br>**Sides of Curb Ramps**<br>**Flared Sides** |
|---|---|
| | *Note: If X is less than 48 inches, then the slope of the flared side shall not exceed 1:12.* |
| | This figure shows a typical curb ramp, cut into a walkway perpendicular to the curb face, with flared sides having a maximum slope of 1:10. The landing at the top, measured from the top of the ramp to the edge of the walkway or closest obstruction is denoted as "x". If x, the landing depth at the top of a curb ramp, is less than 48 inches, then the slope of the flared side shall not exceed 1:12. |
| | **Figure 12(b)**<br>**Sides of Curb Ramps**<br>**Returned Curb** |
| | Where the curb ramp is completely contained within a planting strip or other non-walking surface, so that pedestrians would not normally cross the sides, the curb ramp sides can have steep sides including vertical returned curbs. |

*ADAAG Section 4.13 Doors.*

*4.13.1 General. Doors required to be accessible by 4.1 shall comply with the requirements of 4.13.*

*4.13.4 Double-Leaf Doorways. If doorways have two independently operated door leaves, then at least one leaf shall meet the specifications in 4.13.5 and 4.13.6. That leaf shall be an active leaf.*

*4.13.5 Clear Width. Doorways shall have a minimum clear opening of 32 in (815 mm) with the door open 90 degrees, measured between the face of the door and the opposite stop (see Fig. 24, (b), (c), and (d)). Openings more than 24 in (610 mm) in depth shall comply with 4.2.1 and 4.3.3).*



| **Figure 24a**<br>**Clear Doorway Width and Depth**<br>**Detail** | **Figure 24b**<br>**Clear Doorway Width and Depth**<br>**Hinged Door** |
|---|---|



| Figure 24c | Figure 24d |
|---|---|
| Clear Doorway Width and Depth Sliding Door | Clear Doorway Width and Depth Folding Door |

**4.13.9 Door Hardware.** *Handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. Lever-operated mechanisms, push-type mechanisms, and U-shaped handles are acceptable designs. When sliding doors are fully open, operating hardware shall be exposed and usable from both sides. Hardware required for accessible door passage shall be mounted no higher than 48 in (1220 mm) above finished floor.*

**4.13.12 Automatic Doors and Power-Assisted Doors.** *If an automatic door is used, then it shall comply with ANSI/BHMA A156.10-1985. Slowly opening, low-powered, automatic doors shall comply with ANSI A156.19-1984. Such doors shall not open to back check faster than 3 seconds and shall require no more than 15 lbf (66.6N) to stop door movement. If a power-assisted door is used, its door-opening force shall comply with 4.13.11 and its closing shall conform to the requirements in ANSI A156.19-1984.*

**Recommendations**

*1. Provide signage at the curb ramps located adjacent to the pool and the east side parking spaces stating that they are "Not Intended for Disabled Use" or repair them in accordance with sections 4.5, 4.7 and 4.8 of the ADAAG. The ramp located near the main entrance needs to be repaired in order to comply with sections 4.5, 4.7 and 4.8 of the ADAAG (this includes detectable warnings). This ramp must also connect to the accessible route with the "crosswalk" leading to the access aisles of the newly striped accessible parking spaces.*

*The running slope of curb ramps cannot exceed 1:12. In alterations where it is technically infeasible to meet new construction requirements, curb ramps may have a maximum slope of 1:10 if the rise does not exceed 6 inches. It is important that transitions to curb ramps be flush. Lips at the bottom of ramps, a common complaint, impede the momentum needed to propel a wheelchair up-slope. Severe counter slopes can do the same thing and cause footrests to scrape. While a 5% adjoining slope is allowed for drainage, gutters, and roadway crowns, this slope should be minimized wherever possible (a maximum 2% slope is preferred).*

*The minimum clear width of a curb ramp is 36 inches, exclusive of flared sides. Curb ramp surfaces, including flared sides, must comply with requirements in 4.5 for ground and floor surfaces be "stable, firm, and slip resistant." The cross-slope of the curb*

ramp (2% maximum) must be minimized because it makes wheelchair travel difficult by distributing weight and required force to one side and causing front casters to veer. Where pedestrians cross the ramp, curb cuts are required to have side flares; sharp returns present tripping hazards.

The edges of curbs can provide a cue to people with vision impairments. Since curb ramps remove this detectable drop-off, ADAAG requires a distinctive dome patterning for the surface of curb ramps detectable by canes or by foot so that people with vision impairments could detect the transition from pedestrian area to street.

It is important that parked cars, lampposts, utility poles, and other elements placed along sidewalks not obstruct connecting accessible routes. Space is needed at the top and bottom of ramps so that people using wheelchairs can align with the running slope and maneuver from ramps, including when making turns (which is difficult on sloped surfaces). At curb ramps, a landing provides the necessary connection to an accessible route. A landing with a minimum length of 48 inches will provide sufficient turning space. Where space at the top is less than 48 inches, side flares must have a maximum slope of 1:12 instead of 1:10 at the curb face.

The cross slope (2% maximum) must be minimized because it makes wheelchair travel difficult by distributing more weight and required force to one side and causing front casters to veer. Ramp surfaces must comply with requirements for ground and floor surfaces in 4.5 and be "stable, firm, and slip-resistant." A specific level of slip-resistance is not mandated. It is difficult to categorize various materials as acceptable or unacceptable since surface treatments (texturing and applied coatings) can make a considerable difference. It is important that consideration be given to the conditions likely to be found on the surface, such as providing a higher level of slip-resistance on surfaces exposed to moisture. Cross slopes on walks and ground or floor surfaces can cause considerable difficulty in propelling a wheelchair in a straight line.

People who have difficulty walking or maintaining balance or who use crutches, canes, or walkers, and those with restricted gaits are particularly sensitive to slipping and tripping hazards. For such people, a stable and regular surface is necessary for safe walking, particularly on stairs. Wheelchairs can be propelled most easily on surfaces that are hard, stable, and regular. Soft loose surfaces such as shag carpet, loose sand or gravel, wet clay, and irregular surfaces such as cobblestones can significantly impede wheelchair movement.

2. A solution to the problem of a lack of clear width and non-compliant door hardware at the sets of doors at the east side entrance is to replace them with automatic doors.

The clear width of the opening is measured from the face of the door in a 90 degrees open position to the opposite stop. Panic bars and other hardware do not require additional width since they are usually mounted above the widest portion of wheelchairs. In alterations, a projection up to 5/8 inch is permitted for the latch-side stop where it would otherwise be necessary to widen a door. Swing-away or offset

*hinges can provide additional clearance.*

*Hardware used to operate doors, including handles, pulls, latches and locks, must have a shape that is "easy to grasp with one hand" and does not require tight grasping or pinching, or twisting of the wrist to operate (i.e., no round knobs). Various types of hardware are acceptable although those that can be operated with a closed fist (levers, push bars) or a loose grip (D-pull handles) accommodate the broadest range of users. Thumb turns, which are operated with simultaneous hand and finger movement, require a high degree of dexterity and coordination and are not recommended.*

*Fully automatic doors, which produce the most force, are usually activated through control mats or sensory devices and are often used in facilities with heavy traffic such as airport terminals and grocery stores where people may be traveling with luggage or shopping carts. Low-powered doors are typically used at entries with lower levels of traffic to provide an alternative to manual doors, including revolving doors, in the same location. Most operate slowly, allow manual opening, and are often activated by a push button or plate. Devices that can be reactivated before the closing cycle is completed are recommended where traffic may be high. Power-assisted doors facilitate door opening by reducing the resistance force of closers.*

## III.  INTERIOR RAMPS

A. The ramp which leads toward Zaffino's Lounge on the 12th floor violates several provisions under the ADAAG. The slope is 9.4 % which violates sections 4.3.2(2), 4.3.7 and 4.8.2 of the ADAAG. The handrails are not continuous. They do not extend at least 12 in beyond the top and bottom of the ramp segment and they are not found on both sides of the ramp violating section 4.8.5 of the ADAAG.

  

 

13

***ADAAG Section 4.8 Ramps.***

*4.8.1 General. Any part of an accessible route with a slope greater than 1:20 shall be considered a ramp and shall comply with 4.8.*

*4.8.2 Slope and Rise.* **The least possible slope shall be used for any ramp. The maximum slope of a ramp in new construction shall be 1:12. The maximum rise for any run shall be 30 in (760 mm) (see Fig. 16). Curb ramps and ramps to be constructed on existing sites or in existing buildings or facilities may have slopes and rises as allowed in 4.1.6(3)(a) if space limitations prohibit the use of a 1:12 slope or less.**



**Figure 16**
**Components of a Single Ramp Run and Sample Ramp Dimensions**

If the slope of a ramp is between 1:12 and 1:16, the maximum rise shall be 30 inches (760 mm) and the maximum horizontal run shall be 30 feet (9 m). If the slope of the ramp is between 1:16 and 1:20, the maximum rise shall be 30 inches (760 mm) and the maximum horizontal run shall be 40 feet (12 m).

*4.8.4 Landings. Ramps shall have level landings at bottom and top of each ramp and each ramp run. Landings shall have the following features:*

*(1) The landing shall be at least as wide as the ramp run leading to it.*

*(2) The landing length shall be a minimum of 60 in (1525 mm) clear.*

*(3) If ramps change direction at landings, the minimum landing size shall be 60 in by 60 in (1525 mm by 1525 mm).*

*(4) If a doorway is located at a landing, then the area in front of the doorway shall comply with 4.13.6*

*4.8.5 Handrails.* **If a ramp run has a rise greater than 6 in (150 mm) or a horizontal projection greater than 72 in (1830 mm), then it shall have handrails on both sides. Handrails are not required on curb ramps or adjacent to seating in assembly areas. Handrails shall comply with 4.26 and shall have the following features:**

**(1) Handrails shall be provided along both sides of ramp segments. The inside handrail on switchback or dogleg ramps shall always be continuous.**

**(2) If handrails are not continuous, they shall extend at least 12 in (305 mm) beyond the top and bottom of the ramp segment and shall be parallel with the floor or ground surface (see Fig. 17).**



(3) The clear space between the handrail and the wall shall be 1 - 1/2 in (38 mm).

(4) Gripping surfaces shall be continuous.

(5) Top of handrail gripping surfaces shall be mounted between 34 in and 38 in (865 mm and 965 mm) above ramp surfaces.

**(6) Ends of handrails shall be either rounded or returned smoothly to floor, wall, or post.**

(7) Handrails shall not rotate within their fittings.

**ADAAG Section 4.3 Accessible Route.**

**4.3.2 Location.**

(2) At least one accessible route shall connect accessible buildings, facilities, elements, and spaces that are on the same site.

**4.3.7 Slope.** An accessible route with a running slope greater than 1:20 is a ramp and shall comply with 4.8. Nowhere shall the cross slope of an accessible route exceed 1:50.

*Recommendations*

*Provide a ramp with at least 36 inches clear width between handrails, with a slope not exceeding 1:12 and a cross slope not exceeding 1:50; with level landings at least as wide as the ramp and 60 inches long at the top and bottom of the ramp; and with edge protection at least 2 inches high at the drop off sides. Level landings are essential toward maintaining an aggregate slope that complies with these guidelines. A ramp landing that is not level causes individuals using wheelchairs to tip backward or bottom out when the ramp is approached. Provide handrails that are between 1¼ inches and 1½ inches in diameter with a continuous gripping surface along both sides of the ramp, extending at least 12 inches beyond the top and bottom of the ramp parallel with the ground surface. Ensure that handrails are mounted between 34 inches and 38 inches above the ramp surface, with ends rounded or returned smoothly to the floor, wall, or post, and that they do not rotate within their fittings. Ensure that the ramp and approaches are designed so that water will not accumulate on walking surfaces.*

*A maximum slope of 1:12 is specified although ADAAG calls for the "least possible" slope to encourage more gradual slopes which better serve children and people with limited stamina or upper body strength. A recent study by the Access Board ("Technical Requirements for Ramps" (1996) by the Center for Accessible Housing) indicates a significant increase in exertion occurs on ramps with slopes 1:14 or steeper. Consider slopes between 1:16 and 1:20 as preferred, especially at ramps with long runs. The slope should be consistent along the full length of the run. Variation above regular construction tolerances can be disruptive to wheelchair travel, especially in the ascent direction.*

## IV.  ACCESSIBLE PUBLIC RESTROOMS

A.  The designated accessible restrooms have a number of ADAAG violations. There is restroom signage which is not located on the wall adjacent to the latch side of the door, mounted 60 inches above the finish floor to the centerline of the sign, violating section 4.30.6 of the ADAAG. There are lavatories which do not provide sufficient knee clearance violating section 4.19.2 of the ADAAG. There are water closets which lack proper grab bar placement and/or have the flush control on the short side toward the side wall violating sections 4.16.4 and 4.16.5 of the ADAAG. There are dispensers which are not at the location required under 4.16.6 and figure 29(b) of the ADAAG. The water closet in the men's restroom, near Zaffino's has the centerline at 17 inches from the side wall. The centerline is required to be an absolute 18 inches from the side wall as required in section 4.17.3 and as shown in figure 30a of the ADAAG. There are toilet stall doors which do not self-close properly violating section 4.13.10 of the ADAAG. The door to the Men's restroom near Zaffino's does not provide the required latch-side clearance violating section 4.13.6 of the ADAAG.



***ADAAG Section 4.30*** *Signage.*

*4.30.1 General. Signage required to be accessible by 4.1 shall comply with the applicable provisions of 4.30.*

*4.30.2 Character Proportion. Letters and numbers on signs shall have a width-to-height ratio between 3:5 and 1:1 and a stroke-width-to-height ratio between 1:5 and 1:10.*

*4.30.3 Character Height. Characters and numbers on signs shall be sized according to the viewing distance from which they are to be read. The minimum height is measured using an upper case X. Lower case characters are permitted.*

*4.30.4 Raised and Brailled Characters and Pictorial Symbol Signs (Pictograms). Letters and numerals shall be raised 1/32 in (0.8 mm) minimum, upper case, sans serif or simple serif type and shall be accompanied with Grade 2 Braille. Raised characters shall be at least 5/8 in (16 mm) high, but no higher than 2 in (50 mm). Pictograms shall be accompanied by the equivalent verbal description placed directly below the pictogram. The border dimension of the pictogram shall be 6 in (152 mm) minimum in height.*

*4.30.5 Finish and Contrast. The characters and background of signs shall be eggshell, matte, or other non-glare finish. Characters and symbols shall contrast with their background -- either light characters on a dark background or dark characters on a light background.*

**4.30.6 Mounting Location and Height. Where permanent identification is provided for rooms and spaces, signs shall be installed on the wall adjacent to the latch side of the door. Where there is no wall space to the latch side of the door, including at double leaf doors, signs shall be placed on the nearest adjacent wall. Mounting height shall be 60 in (1525 mm) above the finish floor to the centerline of the sign. Mounting location for such signage shall be so that a person may approach within 3 in (76 mm) of signage without encountering protruding objects or standing within the swing of a door.**

*4.30.7 Symbols of Accessibility.*

**(1) Facilities and elements required to be identified as accessible by 4.1 shall use the international symbol of accessibility. The symbol shall be displayed as shown in Fig. 43(a) and (b).**



| | |
|---|---|
| (a) Proportions International Symbol of Accessibility | **Figure 43a International Symbol of Accessibility Proportions**<br><br>*The diagram illustrates the International Symbol of Accessibility on a grid background* |
| (b) Display Conditions International Symbol of Accessibility | **Figure 43b International Symbol of Accessibility Display Conditions**<br><br>*The symbol contrast shall be light on dark, or dark on light.* |

***ADAAG Section 4.19.2 Height and Clearances. Lavatories shall be mounted with the rim or counter surface no higher than 34 in (865 mm) above the finish floor. Provide a***

*clearance of at least 29 in (735 mm) above the finish floor to the bottom of the apron. Knee and toe clearance shall comply with Fig. 31.*

***ADAAG section 4.16 Water Closets.***

***4.16.1 General.*** *Accessible water closets shall comply with 4.16.2 through 4.16.6.*

***4.16.2 Clear Floor Space.*** *Clear floor space for water closets not in stalls shall comply with Fig. 28. Clear floor space may be arranged to allow either a left-handed or right-handed approach.*

***4.16.3 Height.*** *The height of water closets shall be 17 in to 19 in (430 mm to 485 mm), measured to the top of the toilet seat (see Fig. 29(b)). Seats shall not be sprung to return to a lifted position.*

***4.16.4 Grab Bars.*** *Grab bars for water closets not located in stalls shall comply with 4.26 and Fig. 29.* **The grab bar behind the water closet shall be 36 in (915 mm) minimum.**

***4.16.5 Flush Controls.*** *Flush controls shall be hand operated or automatic and shall comply with 4.27.4.* **Controls for flush valves shall be mounted on the wide side of toilet areas no more than 44 in (1120 mm) above the floor.**

***4.16.6 Dispensers.*** **Toilet paper dispensers shall be installed within reach, as shown in Fig. 29(b). Dispensers that control delivery, or that do not permit continuous paper flow, shall not be used.**



***ADAAG Section 4.17.3*** *Size and Arrangement.* **The size and arrangement of the standard toilet stall shall comply with Fig. 30(a), Standard Stall.** *Standard toilet stalls with a minimum depth of 56 in (1420 mm) (see Fig. 30(a)) shall have wall-mounted water closets. If the depth of a standard toilet stall is increased at least 3 in (75 mm), then a floor-mounted water closet may be used. Arrangements shown for standard toilet stalls may be reversed to allow either a left- or right-hand approach. Additional stalls shall be provided in conformance with 4.22.4.*

> *EXCEPTION: In instances of alteration work where provision of a standard stall (Fig. 30(a)) is technically infeasible or where plumbing code requirements*

*prevent combining existing stalls to provide space, either alternate stall (Fig. 30(b)) may be provided in lieu of the standard stall.*



**Figure 30a**
**Toilet Stalls**
**Standard Stall**

The location of the door is illustrated to be in front of the clear space (next to the water closet), with a maximum stile width of 4 inches (100 mm). An alternate door location is illustrated to be on the side of the toilet stall with a maximum stile width of 4 inches (100 mm). The minimum width of the standard stall shall be 60 inches (1525 mm). The centerline of the water closet shall be 18 inches (455 mm) from the side wall.



**Figure 30d**
**Toilet Stalls**

The side grab bar shall be 40-42 inches in length, beginning 12 inches maximum from the rear wall, 33-36 inches above the finish floor.

***ADAAG Section 4.13.10 Door Closers.*** *If a door has a closer, then the sweep period of the closer shall be adjusted so that from an open position of 70 degrees, the door will take at least 3 seconds to move to a point 3 in (75 mm) from the latch, measured to the leading edge of the door.*

***ADAAG Section 4.13.6  Maneuvering Clearances at Doors.*** *Minimum maneuvering clearances at doors that are not automatic or power-assisted shall be as shown in Fig. 25. The floor or ground area within the required clearances shall be level and clear.*



**Figure 25**
**Maneuvering Clearances at Doors**

*Recommendation:*

*Mount signage for the restrooms on the latch-side of the entrance doors. Placement of tactile signs to the latch-side provides safety since locating signs on doors that swing out is hazardous. It also provides uniformity which makes signs easier to find by people with little or no vision. (This is why tactile signs are not permitted on doors that swing-in). The 60 inch centerline height also provides uniformity as well as convenience in reading signs from a standing position. At signs containing pictograms or other non-tactile information, this should be measured to the centerline of the raised/ Braille portion so that it is not too low (or high). Space must be available for a close approach outside the swing of doors. It is important that fixed elements (e.g., drinking fountains) and furnishings not obstruct the approach. The wheelchair maneuvering clearance required on the pull side of doors should allow adequate space. Where adequate wall space is not available on the latch-side, signs are to be placed on the nearest adjacent wall surface. At double doors or entries with no doors, signs can be placed on either side although attention should be paid to predominant traffic patterns and building-wide uniformity.*

*Provide a lavatory with the top of its rim or counter 34 inches or less above the finished floor; the bottom edge of the apron at least 29 inches above the finished floor; and knee and toe clearances that comply with Fig. 31. An apron clearance of at least 29 inches (minimum depth not specified) allows a person using a wheelchair to get as*

21

close as possible to the front of the lavatory. Provide hot water and drain pipes that are insulated or otherwise configured to protect against contact. To prevent burns, hot water pipes and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. Exposed sharp or abrasive edges are prohibited. Foam or fiber insulation with protective overwrap on drain, hot water supply, and sharp edges or commercially available rigid pipe covers will satisfy this requirement. The P-trap may also be installed parallel to the wall so that it is located outside the knee/toe space. If an underlavatory enclosure is used, the specified knee and toe clearances must be maintained.

Provide a flush control mounted on the "open" side of the toilet's clear floor space; 44 inches or less above the finished floor; and requiring a maximum of 5 pounds of force to operate; or provide an automatic flush device. Provide a rear grab bar that is at least 36 inches in overall length, with the closer end no more than 6 inches from the side wall; mounted 33 to 36 inches above the finished floor. Side grab bars, including those that are continuous, must be mounted to extend at least 54 inches from the back wall; mounted 33 to 36 inches above the finished floor. The centerline of the water closet (toilet) should be positioned at an absolute 18 inches from the side wall in order to allow the full use of the grab bar on the side wall. Flush controls are to be on the wide side. Side transfers are possible where space at least 42 inches from the toilet centerline is available. Toilet paper dispensers should be located below the side grab bar so that they do not obstruct use of this bar. For this reason, large dispensers that do not fit below the grab bar should be avoided in accessible toilet rooms or stalls. Dispensers must provide continuous paper flow; those that have separate sheets or that control delivery are prohibited because they require repetitive hand motion and pinching and are not as usable by people with limited use of hands or arms. The manner of approach and transfer to water closets varies among people with disabilities. The type and extent of disability, the configuration of fixtures, and the availability of space alongside water closets often determine the technique used. ADAAG specifications are based on three types of transfer: perpendicular, diagonal, and side, some of which are illustrated in ADAAG Appendix Figure A6.



22

Adjust the closers on the restroom stall doors because it may be difficult for a person with a disability to open a door against the resistance offered by a closer, it is important that the closing action be slow enough to allow entry and exit. ADAAG requires that the sweep period of the closer be adjusted so that from an open position of 70 degrees, the door will take at least 3 seconds to move to a point 3 inches from the latch, measured to the leading edge of the door.

A possible solution to the latch-side clearance issue at the entrance to the Men's restroom near Zaffino's is to remove the outer door. Another option is to install a power-door opener.

## V. ACCESSIBLE GUEST ROOMS

We were advised that the hotel has 242 guestrooms. This property requires seven (7) accessible rooms with three (3) additional rooms with a roll-in shower. Another seven (7) guestrooms are required to be equipped with visual appliances for people with hearing impairments. Currently, this property has nine (9) rooms designated as accessible, none with a roll-in shower. There is an insufficient amount of guestrooms with roll-in showers violating section 9.1.2 of the ADAAG. All of the accessible rooms were equipped with double beds. Section 9.1.4 of the ADAAG calls for the rooms to be dispersed among the various classes of sleeping accommodations. The rooms lacked notification devices for individuals with hearing impairments violating section 9.1.3 of the ADAAG. Visual notification devices were not provided in the accessible rooms to alert room occupants of incoming telephone calls and a door knock or bell violating sections 9.3.1 and 4.28 of the ADAAG.

We inspected rooms # 317 and # 417. We were instructed that all of the accessible guestrooms are on the same line of rooms and they were all configured in a like manner. Within the designated accessible rooms there are a number of ADAAG violations;

There is insufficient clear floor space in front of the bathtubs violating section 4.20.2 and figure 33 of the ADAAG. The length of the existing sink does not allow for sufficient clear floor space to make a transfer to the tub. An in-tub seat or a seat at the head end of the tub, mounted securely, is not provided violating section 4.20.3 of the ADAAG. Grab bars as required in section 4.20.4 and figure 34 of the ADAAG are not provided. Controls as shown in figure 34 are not provided.

   

  

**The grab bars at the water closets (toilets) do not comply with figure 29 violating section 4.16.4 of the ADAAG. There are dispensers which are not at the location required under 4.16.6 and figure 29(b) of the ADAAG.**

  

**There are elements with controls which require tight pinching or twisting to operate violating sections 4.27.4 of the ADAAG.**

  

**There are elements which are outside of the minimum reach ranges as required in sections 4.25, 4.2.5 and 4.2.6 of the ADAAG.**

   

The doors exiting the accessible rooms do not provide the required latch-side clearance violating section 4.13.6 of the ADAAG.



The clothes racks near the doors are protruding objects violating section 4.4.1 of the ADAAG.



There are tables which do not provide sufficient knee clearance violating section 4.32.3 of the ADAAG.



There are elements (lamps, A/C, etc) within the accessible guestrooms which are blocked by furniture violating sections 9.2.2(2) and 4.3.2(2) of the ADAAG.



**There are alarms within the accessible guestrooms which are not placed 80 inches above the highest floor level within the space or 6 inches below the ceiling, whichever is lower violating section 4.28.3(6) of the ADAAG.**



**The ADAAG guideline for hotels is as follows:**

*ADAAG Section 9 ACCESSIBLE TRANSIENT LODGING.*

*(1) Except as specified in the special technical provisions of this section, accessible transient lodging shall comply with the applicable requirements of section 4. Transient lodging includes facilities or portions thereof used for sleeping accommodations, when not classed as a medical care facility.*

*9.1 Hotels, Motels, Inns, Boarding Houses, Dormitories, Resorts and Other Similar Places of Transient Lodging.*

*9.1.1 General. All public use and common use areas are required to be designed and constructed to comply with section 4 (Accessible Elements and Spaces: Scope and Technical Requirements).*

*9.1.2 Accessible Units, Sleeping Rooms, and Suites. Accessible sleeping rooms or suites that comply with the requirements of 9.2 (Requirements for Accessible Units, Sleeping Rooms, and Suites) shall be provided in conformance with the table below.* **In addition, in hotels, of 50 or more sleeping rooms or suites, additional accessible sleeping rooms or suites that include a roll- in shower shall also be provided in conformance with the table below. Such accommodations shall comply with the requirements of 9.2, 4.21, and Figure 57(a) or (b).**

| Number of Rooms | Accessible Rooms | Rooms with Roll-in Showers |
|---|---|---|
| 1 to 25 | 1 | |
| 26 to 50 | 2 | |
| 51 to 75 | 3 | 1 |
| 76 to 100 | 4 | 1 |
| 101 to 150 | 5 | 2 |
| 151 to 200 | 6 | 2 |
| 201 to 300 | 7 | 3 |

*9.1.3 Sleeping Accommodations for Persons with Hearing Impairments.* **In addition to those accessible sleeping rooms and suites required by 9.1.2, sleeping rooms and suites**

*that comply with 9.3 (Visual Alarms, Notification Devices, and Telephones) shall be provided in conformance with the following table:*

| Number of Elements | Accessible Elements |
|---|---|
| 1 to 25 | 1 |
| 26 to 50 | 2 |
| 51 to 75 | 3 |
| 76 to 100 | 4 |
| 101 to 150 | 5 |
| 151 to 200 | 6 |
| 201 to 300 | 7 |

*9.1.4 Classes of Sleeping Accommodations.*

**(1) In order to provide persons with disabilities a range of options equivalent to those available to other persons served by the facility, sleeping rooms and suites required to be accessible by 9.1.2 shall be dispersed among the various classes of sleeping accommodations** *available to patrons of the place of transient lodging. Factors to be considered include room size, cost, amenities provided, and the number of beds provided.*

*(2) Equivalent Facilitation. For purposes of this section, it shall be deemed equivalent facilitation if the operator of a facility elects to limit construction of accessible rooms to those intended for multiple occupancy, provided that such rooms are made available at the cost of a single occupancy room to an individual with disabilities who requests a single-occupancy room.*

*9.1.5. Alterations to Accessible Units, Sleeping Rooms, and Suites. When sleeping rooms are being altered in an existing facility, or portion thereof, subject to the requirements of this section, at least one sleeping room or suite that complies with the requirements of 9.2 (Requirements for Accessible Units, Sleeping Rooms, and Suites) shall be provided for each 25 sleeping rooms, or fraction thereof, of rooms being altered until the number of such rooms provided equals the number required to be accessible with 9.1.2. In addition, at least one sleeping room or suite that complies with the requirements of 9.3 (Visual Alarms, Notification Devices, and Telephones) shall be provided for each 25 sleeping rooms, or fraction thereof, of rooms being altered until the number of such rooms equals the number required to be accessible by 9.1.3.*

*9.2 Requirements for Accessible Units, Sleeping Rooms and Suites.*

*9.2.1 General. Units, sleeping rooms, and suites required to be accessible by 9.1 shall comply with 9.2.*

**9.2.2 Minimum Requirements.** *An accessible unit, sleeping room or suite shall be on an accessible route complying with 4.3 and have the following accessible elements and spaces.*

*(1) Accessible sleeping rooms shall have a 36 in (915 mm) clear width maneuvering space located along both sides of a bed, except that where two beds are provided, this requirement can be met by providing a 36 in (915 mm) wide maneuvering space located between the two beds.*

***(2) An accessible route complying with 4.3 shall connect all accessible spaces and elements, including telephones, within the unit, sleeping room, or suite.*** *This is not intended to require an elevator in multi-story units as long as the spaces identified in 9.2.2(6) and (7) are on accessible levels and the accessible sleeping area is suitable for dual occupancy.*

*(3) Doors and doorways designed to allow passage into and within all sleeping rooms, suites or other covered units shall comply with 4.13.*

***(4) If fixed or built-in storage facilities such as cabinets, shelves, closets, and drawers are provided in accessible spaces, at least one of each type provided shall contain storage space complying with 4.25. Additional storage may be provided outside of the dimensions required by 4.25.***

***(5) All controls in accessible units, sleeping rooms, and suites shall comply with 4.27.***

*(6) Where provided as part of an accessible unit, sleeping room, or suite, the following spaces shall be accessible and shall be on an accessible route:*

*(a) the living area.*

*(b) the dining area.*

*(c) at least one sleeping area.*

*(d) patios, terraces, or balconies.*
> *EXCEPTION: The requirements of 4.13.8 and 4.3.8 do not apply where it is necessary to utilize a higher door threshold or a change in level to protect the integrity of the unit from wind/water damage. Where this exception results in patios, terraces or balconies that are not at an accessible level, equivalent facilitation shall be provided (e.g., equivalent facilitation at a hotel patio or balcony might consist of providing raised decking or a ramp to provide accessibility).*

*(e) at least one full bathroom (i.e., one with a water closet, a lavatory, and a bathtub or shower).*

*(f) if only half baths are provided, at least one half bath.*

*(g) carports, garages or parking spaces.*

*(7) Kitchens, Kitchenettes, or Wet Bars. When provided as accessory to a sleeping room or suite, kitchens, kitchenettes, wet bars, or similar amenities shall be accessible. Clear floor space for a front or parallel approach to cabinets, counters, sinks, and appliances shall be provided to comply with 4.2.4. Countertops and sinks shall be mounted at a maximum height of 34 in (865 mm) above the floor. At least fifty percent of shelf space in cabinets or refrigerator/freezers shall be within the reach ranges of 4.2.5 or 4.2.6 and space shall be designed to allow for the operation of cabinet and/or appliance doors so that all cabinets and appliances are accessible and usable. Controls and operating mechanisms shall comply with 4.27.*

**(8) Sleeping room accommodations for persons with hearing impairments required by 9.1 and complying with 9.3 shall be provided in the accessible sleeping room or suite.**

*9.3 Visual Alarms, Notification Devices and Telephones.*

**9.3.1 General. In sleeping rooms required to comply with this section, auxiliary visual alarms shall be provided and shall comply with 4.28.4. Visual notification devices shall also be provided in units, sleeping rooms and suites to alert room occupants of incoming telephone calls and a door knock or bell. Notification devices shall not be connected to auxiliary visual alarm signal appliances. Permanently installed telephones shall have volume controls complying with 4.31.5; an accessible electrical outlet within 4 ft (1220 mm) of a telephone connection shall be provided to facilitate the use of a text telephone.**

*9.3.2 Equivalent Facilitation. For purposes of this section, equivalent facilitation shall include the installation of electrical outlets (including outlets connected to a facility's central alarm system) and telephone wiring in sleeping rooms and suites to enable persons with hearing impairments to utilize portable visual alarms and communication devices provided by the operator of the facility.*

**9.4 Other Sleeping Rooms and Suites. Doors and doorways designed to allow passage into and within all sleeping units or other covered units shall comply with 4.13.5.**

**ADAAG Section 4.28 Alarms.**

**4.28.1 General.** *Alarm systems required to be accessible by 4.1 shall comply with 4.28. At a minimum, visual signal appliances shall be provided in buildings and facilities in each of the following areas: restrooms and any other general usage areas (e.g., meeting rooms), hallways, lobbies, and any other area for common use.*

**4.28.2 Audible Alarms.** *If provided, audible emergency alarms shall produce a sound that exceeds the prevailing equivalent sound level in the room or space by at least 15 dbA or exceeds any maximum sound level with a duration of 60 seconds by 5 dbA, whichever is louder. Sound levels for alarm signals shall not exceed 120 dbA.*

29

*4.28.3 Visual Alarms. Visual alarm signal appliances shall be integrated into the building or facility alarm system. If single station audible alarms are provided then single station visual alarm signals shall be provided. Visual alarm signals shall have the following minimum photometric and location features:*

*(1) The lamp shall be a xenon strobe type or equivalent.*

*(2) The color shall be clear or nominal white (i.e., unfiltered or clear filtered white light).*

*(3) The maximum pulse duration shall be two-tenths of one second (0.2 sec) with a maximum duty cycle of 40 percent. The pulse duration is defined as the time interval between initial and final points of 10 percent of maximum signal.*

*(4) The intensity shall be a minimum of 75 candela.*

*(5) The flash rate shall be a minimum of 1 Hz and a maximum of 3 Hz.*

*(6) The appliance shall be placed 80 in (2030 mm) above the highest floor level within the space or 6 in (152 mm) below the ceiling, whichever is lower.*

*(7) **In general, no place in any room or space required to have a visual signal appliance shall be more than 50 ft (15 m) from the signal (in the horizontal plane).** In large rooms and spaces exceeding 100 ft (30 m) across, without obstructions 6 ft (2 m) above the finish floor, such as auditoriums, devices may be placed around the perimeter, spaced a maximum 100 ft (30 m) apart, in lieu of suspending appliances from the ceiling.*

*(8) **No place in common corridors or hallways in which visual alarm signaling appliances are required shall be more than 50 ft (15 m) from the signal.***

*4.28.4 Auxiliary Alarms. **Units and sleeping accommodations shall have a visual alarm connected to the building emergency alarm system or shall have a standard 110-volt electrical receptacle into which such an alarm can be connected and a means by which a signal from the building emergency alarm system can trigger such an auxiliary alarm. When visual alarms are in place the signal shall be visible in all areas of the unit or room. Instructions for use of the auxiliary alarm or receptacle shall be provided.***

**Recommendations**

Three (3) rooms equipped with a roll-in shower are required. Another seven (7) rooms are required which are equipped for persons with hearing impairments.

For the additional rooms which are required for persons with hearing impairments an ADA compliance kit is available which includes:

- *TTY (Text Telephone)*
- *Multifunction Alerting System with All-in-One Unit Functions: Telephone, Doorbell, Alarm Clock, Sound Monitor*
- *Telephone Handset Amplifier*
- *Smoke Detector*
- *Assistive Listening Devices available sign (ADA-SIGN)*

*Locating visual emergency alarms in rooms where persons who are deaf may work or reside alone can ensure that they will always be warned when an emergency alarm is activated. To be effective, such devices must be located and oriented so that they will spread signals and reflections throughout a space or raise the overall light level sharply. However, visual alarms alone are not necessarily the best means to alert sleepers. A study conducted by Underwriters Laboratory (UL) concluded that a flashing light more than seven times brighter was required (110 candela v. 15 candela, at the same distance) to awaken sleepers as was needed to alert awake subjects in a normal daytime illuminated room.*

*For hotel and other rooms where people are likely to be asleep, a signal-activated vibrator placed between mattress and box spring or under a pillow was found by UL to be much more effective in alerting sleepers. Many readily available devices are sound-activated so that they could respond to an alarm clock, clock radio, wake-up telephone call or room smoke detector. Activation by a building alarm system can either be accomplished by a separate circuit activating an auditory alarm which would, in turn, trigger the vibrator or by a signal transmitted through the ordinary 110-volt outlet. Transmission of signals through the power line is relatively simple and is the basis of common, inexpensive remote light control systems sold in many department and electronic stores for home use. So-called "wireless" intercoms operate on the same principal.*

*The following figure shows an example of the configuration where a roll-in shower is included in a bathroom.*



Fig. A7

**Figure A7**
**Configurations of Toilet Room with Roll-in Shower**

Diagram (a): A 90 inch by 60 inch toilet room with roll-shower is illustrated. A 32 inch wide clear opening is centered in the middle of the long wall opposite the fixtures. On the back wall, measured from the left side wall, the centerline of the toilet is 18 inches. The centerline of the lavatory is 30 inches from the centerline of the toilet. The width of the shower stall is 30 inches measured from the right side wall. The depth of the shower seat is 18 inches measured from the front wall.

Diagram (b): A 60 inch by 93 inch toilet room with roll-in shower is illustrated. A 32 inch wide clear opening is centered in the middle of the long wall. On the side wall, the centerline of the toilet is 18 inches from the back wall, and the centerline of the lavatory is 27 inches from the centerline of the toilet. The shower is on the opposite side wall. The depth of the shower seat is 18 inches measured from the front wall.

*Typically a shower chair, a mobility aid more suitable for bathing than standard wheelchairs, is used with roll-in showers. The required folding seat in combination roll-in/transfer showers offers greater flexibility by allowing transfer as well, particularly for people traveling without a shower chair. Two types of design for this combination shower are provided in ADAAG (Figure 57).*

**ADAAG Section 4.21 Shower Stalls.**

**4.21.1* General.** Accessible shower stalls shall comply with 4.21.

**4.21.2 Size and Clearances.** Except as specified in 9.1.2, shower stall size and clear floor space shall comply with Fig. 35(a) or (b). The shower stall in Fig. 35(a) shall be 36 in by 36 in (915 mm by 915 mm). Shower stalls required by 9.1.2 shall comply with Fig. 57(a) or (b). The shower stall in Fig. 35(b) will fit into the space required for a bathtub.

**4.21.3 Seat.** A seat shall be provided in shower stalls 36 in by 36 in (915 mm by 915 mm) and shall be as shown in Fig. 36. The seat shall be mounted 17 in to 19 in (430 mm to 485 mm) from the bathroom floor and shall extend the full depth of the stall. In a 36 in by 36 in (915 mm by 915 mm) shower stall, the seat shall be on the wall opposite the controls. Where a fixed seat is provided in a 30 in by 60 in minimum (760 mm by 1525 mm) shower stall, it shall be a folding type and shall be mounted on the wall adjacent to the controls as shown in Fig. 57. The structural strength of seats and their attachments shall comply with 4.26.3.

**4.21.4 Grab Bars.** Grab bars complying with 4.26 shall be provided as shown in Fig. 37.

**4.21.5 Controls.** Faucets and other controls complying with 4.27.4 shall be located as shown in Fig. 37. In shower stalls 36 in by 36 in (915 mm by 915 mm), all controls, faucets, and the shower unit shall be mounted on the side wall opposite the seat.

**4.21.6 Shower Unit.** A shower spray unit with a hose at least 60 in (1525 mm) long that can be used both as a fixed shower head and as a hand-held shower shall be provided.

**4.21.7 Curbs.** If provided, curbs in shower stalls 36 in by 36 in (915 mm by 915 mm) shall be no higher than 1/2 in (13 mm). Shower stalls that are 30 in by 60 in (760 mm by 1525 mm) minimum shall not have curbs.

**4.21.8 Shower Enclosures** *If provided, enclosures for shower stalls shall not obstruct controls or obstruct transfer from wheelchairs onto shower seats.*



**Figure 57a**
**Roll-in Shower with Folding Seat**

Where a fixed seat is provided in a 30 inch minimum by 60 inch (716 mm by 1220 mm) minimum shower stall, the controls and spray unit on the back (long) wall shall be located a maximum of 27 inches (685 mm) from the side wall where the seat is attached. (4.21.2, 9.1.2)

**Figure 57b**
**Roll-in Shower with Folding Seat**

An alternate 36 inch minimum by 60 inch (915 mm by 1220 mm) minimum shower stall is illustrated. The width of the stall opening stall shall be a minimum of 36 inches (915 mm) clear located on a long wall at the opposite end of the shower from the controls. The shower seat shall be 24 inches (610 mm) minimum in length by 16 inches (330 mm) minimum in width and may be rectangular in shape. The seat shall be located next to the opening to the shower and adjacent to the end wall containing the shower head and controls. (4.21.2, 9.1.2, A4.23.3)

**Figure 35a**
**Shower Size and Clearances**
**36-in by 36-in (760mm by 1525mm) Stall**

The clear floor space shall be a minimum of 48 inches (1220 mm) in length by a minimum of 36 inches (915 mm) in width and allow for a parallel approach. The clear floor space shall extend 1 foot beyond the shower wall on which the seat is mounted.

**Figure 35b**
**Shower Size and Clearances**
**30-in by 60-in (915mm by 915mm) Stall**

The clear floor space alongside the shower shall be a minimum of 60 inches (1220 mm) in length by a minimum of 36 inches (915 mm) in width.

33



**Figure 36**
**Shower Seat Design**

The diagram illustrates an L-shaped shower seat extending the full depth of the stall. The seat shall be located 1-1/2 inches (38 mm) maximum from the wall. The front of the seat (nearest to the opening) shall extend a maximum 16 inches (330 mm) from the wall. The back of the seat (against the back wall) shall extend a maximum of 23 inches (582 mm) from the side wall and shall be a maximum of 15 inches (305 mm) deep.



**Figure 37**
**Grab Bars at Shower Stalls**

Fig. 37(a) 36 inches by 36 inches (915 mm by 915 mm) Stall. The diagram illustrates an L-shaped grab bar that is located along the full depth of the control wall (opposite the seat) and halfway along the back wall. The grab bar shall be mounted between 33 to 36 inches (840-915 mm) above the shower floor. The bottom of the control area shall be a maximum of 38 inches (965 mm) high and the top of the control area shall be a maximum of 48 inches (1220 mm) high. The controls and spray unit shall be within 18 inches (455 mm) of the front of the shower.

Fig. 37(b) 30 inches by 60 inches (760 mm by 1525 mm) Stall. The diagram illustrates a U-shaped grab bar that wraps around the stall. The grab bar shall be between 33 to 36 inches (840-915 mm) high. The controls are placed in an area between 38 inches and 48 inches (965 mm and 1220 mm) above the floor. If the controls are located on the back (long) wall they shall be located 27 inches (685 mm) from the side wall. The shower head and control area may be located on either side wall.

*The following shows the requirements if a tub is in the accessible bathroom;*

*ADAAG Section 4.20  Bathtubs.*

*4.20.1 General.  Accessible bathtubs shall comply with 4.20.*

*4.20.2 Floor Space.  Clear floor space in front of bathtubs shall be as shown in Fig. 33.*

*4.20.3 Seat.  An in-tub seat or a seat at the head end of the tub shall be provided as shown in Fig. 33 and 34. The structural strength of seats and their attachments shall comply with 4.26.3. Seats shall be mounted securely and shall not slip during use.*

*4.20.4 Grab Bars.  Grab bars complying with 4.26 shall be provided as shown in Fig. 33*

and 34.

**4.20.5 Controls.** Faucets and other controls complying with 4.27.4 shall be located as shown in Fig. 34.

**4.20.6 Shower Unit.** A shower spray unit with a hose at least 60 in (1525 mm) long that can be used both as a fixed shower head and as a hand-held shower shall be provided.

**4.20.7 Bathtub Enclosures.** If provided, enclosures for bathtubs shall not obstruct controls or transfer from wheelchairs onto bathtub seats or into tubs. Enclosures on bathtubs shall not have tracks mounted on their rims.

Place the controls in the "offset" position as shown above in figure 34(b) of the ADAAG. Provide an ADA compliant tub seat (a securely fastened seat is required) and grab bars as shown in figures 33 and 34. Controls must be within reach from outside the tub and cannot interfere with the use of the grab bar on this wall. Tracks on the tub rim are not allowed as they can interfere with the transfer to tub seats. Dual grab bars on the back wall are needed for transfer to the seat and into the tub.

Seats at the head of the tub are limited to a 15 inch depth so that back support is available from the side wall (which is why grab bars cannot be placed on the seat wall). Dual grab bars on the back wall must extend to the edge of the seat for use in transferring to the seat and for lowering oneself into the tub where one is able to do so. A hose for shower spray units longer than the required minimum of 60 inches is recommended for easier use of the shower spray unit from the seat.



**Figure 33**
**Clear Floor Space at Bathtubs**

Fig. 33(a) With Seat in Tub. If the approach is parallel to the bathtub, a 30 inch (760 mm) minimum width by 60 inch (1525 mm) minimum length clear space is required alongside the bathtub. If the approach is perpendicular to the bathtub, a 48 inch (1220 mm) minimum width by 60 inch (1525 mm) minimum length clear space is required.

Fig. 33(b) With Seat at Head of Tub. If the approach is parallel to the bathtub, a 30 inch (760 mm) minimum width by 75 inch (1905 mm) minimum length clear space is required alongside the bathtub. The seat width must be 15 inches (380 mm) and must extend the full width of the bathtub.

35

Figure 34. Grab Bars at Bathtubs.

Controls are required to be located in an area between the open edge and the midpoint of the tub ("offset") and to be located at the foot of the tub

Figure 34(a) With Seat in Tub. At the foot of the tub, the grab bar shall be 24 inches (610 mm) minimum in length measured from the outer edge of the tub. On the back wall, two grab bars are required. The grab bars mounted on the back (long) wall shall be a minimum 24 inches (610 mm) in length located 12 inches (305 mm) maximum from the foot of the tub and 24 inches (610 mm) maximum from the head of the tub. One grab bar on the back wall shall be located 9 inches (230 mm) above the rim of the tub. The other shall be 33 to 36 inches (840 mm to 915 mm) above the bathroom floor. At the head of the tub, the grab bar shall be a minimum of 12 inches (305 mm) in length measured from the outer edge of the tub

Figure 34(b) With Seat at Head of Tub. At the foot of the tub, the grab bar shall be a minimum of 24 inches (610 mm) in length measured from the outer edge of the tub. On the back wall, two grab bars are required. The grab bars mounted on the back wall shall be a minimum of 48 inches (1220 mm) in length located a maximum of 12 inches (305 mm) from the foot of the tub and a maximum of 15 inches (380 mm) from the head of the tub. Heights of grab bars are as described above. No horizontal grab bar should be placed at the head of the tub



*The following shows the requirements for a water closet (toilet) in an accessible bathroom. The grab bars and dispensers should be located as shown in the figures below. A portable or attached raised toilet seat shall be provided in all designated permanent disability accessible rooms if the seat is not at a height of 17 – 19 inches;*



Figure 28. Clear Floor Space at Water Closets.

[Note: Figure 28 applies to water closets not installed in toilet stalls. Figure 30 covers toilet stalls.]

For a side or forward approach, the water closet must be located along the back wall and the centerline of the water

closet must be 18 inches (455 mm) from the side wall with the side grab bar.

For a forward approach/transfer, when a lavatory is installed beside the water closet, there must be a clear floor space at the water closet that is a minimum 48 inches (1220 mm) in width (parallel to the back wall) and a minimum of 66 inches (1675 mm) in length. An accessible lavatory may overlap the clear floor space at the back wall as long as a minimum 18 inches (455 mm) clearance is maintained between the centerline of the water closet and the nearest edge of the lavatory. Grab bars are provided on the side and back wall (see figure 29).

For a side approach/transfer, when a lavatory is installed beside the water closet, there must be a clear floor space at the water closet that is a minimum of 48 inches (1220 mm) in width (parallel to the back wall) and a minimum of 56 inches (1420 mm) in length. An accessible lavatory may overlap the clear floor space at the back wall as long as a minimum 18 inches (455 mm) clearance is maintained between the centerline of the water closet and the nearest edge of the lavatory. Grab bars are provided on the side and back wall (see figure 29).

For a forward and side approach or for a lateral transfer, there must be a clear floor space at the water closet that is a minimum of 60 inches (1525 mm) in width (parallel to the back wall) and a minimum of 56 inches (1420 mm) in length. There must be a clear floor space of 42 inches (1066 mm) minimum from the centerline of the water closet to the nearest obstruction/wall. A lavatory may not overlap this clear space. Grab bars are provided on the side and back wall (see figure 29).



**Figure 29: Grab Bars at Water Closets.**

**Figure 29(a) Back Wall.** A 36 inches (915 mm) minimum length grab bar, mounted 33-36 inches (840-915 mm) above the finish floor, is required behind the water closet. The grab bar must extend at least 12 inches (305 mm) from the centerline of the water closet toward the side wall and at least 24 inches (610 mm) from the centerline of the water closet toward the open side.

**Figure 29(b) Side Wall.** A 42 inches (1065 mm) minimum length grab bar is required on the side wall, spaced a maximum of 12 inches (305 mm) from the back wall and extending a minimum of 54 inches (1370 mm) from the back wall at a height of 33-36 inches (840-915 mm). The toilet paper dispenser shall be mounted below the grab bar at a minimum height of 19 inches (485 mm). The height of the toilet seat shall be 17 to 19 inches (430 - 485 mm) above the finished floor.

*The centerline of the water closet (toilet) should be positioned at an absolute 18 inches from the side wall in order to allow the full use of the grab bar on the side wall. Flush controls are to be on the wide side. Side transfers are possible where space at least 42 inches from the toilet centerline is available. The manner of approach and transfer to water closets varies among people with disabilities.*

*Where plumbing restrictions don't allow for the toilet itself to be moved the wall can be built out as an alternative measure. If the water closet has the flush control on the short side it should be replaced with one which has the flush control on the opposite side.*

*Controls and operating mechanisms (temperature controls, lamp switches, drapery wands, curtain rods, etc.) must be within reach ranges as specified in sections 4.25, 4.2.5 and 4.2.6 of the ADAAG. They must also conform to section 4.27.4 of the ADAAG.*

## ADAAG Section 4.25 Storage.

**4.25.1 General.** Fixed storage facilities such as cabinets, shelves, closets, and drawers required to be accessible by 4.1 shall comply with 4.25

**4.25.2 Clear Floor Space.** A clear floor space at least 30 in by 48 in (760 mm by 1220 mm) complying with 4.2.4 that allows either a forward or parallel approach by a person using a wheelchair shall be provided at accessible storage facilities.

**4.25.3 Height.** Accessible storage spaces shall be within at least one of the reach ranges specified in 4.2.5 and 4.2.6 (see Fig. 5 and Fig.6). Clothes rods or shelves shall be a maximum of 54 in (1370 mm) above the finish floor for a side approach. Where the distance from the wheelchair to the clothes rod or shelf exceeds 10 in (255 mm) (as in closets without accessible doors) the height and depth to the rod or shelf shall comply with Fig. 38(a) and Fig. 38(b).

**4.25.4 Hardware.** Hardware for accessible storage facilities shall comply with 4.27.4. Touch latches and U-shaped pulls are acceptable.





**Figure 38a**
**Storage Shelves and Closets**
**Shelves**

If the clear floor space allows a parallel approach by a person in a wheelchair and the distance between the wheelchair and the shelf exceeds 10 inches, the maximum high side reach shall be 48 inches (1220 mm) above the floor and the low side reach shall be a minimum of 9 inches (230 mm) above the floor. The shelves can be adjustable. The maximum distance from the user to the shelf shall be 21 inches (535 mm).

**Figure 38b**
**Storage Shelves and Closets**
**Closets**

If the clear floor space allows a parallel approach by a person in a wheelchair and the distance between the wheelchair and the clothes rod exceeds 10 inches, the maximum high side reach shall be 48 inches (1220 mm). The maximum distance from the user to the clothes rod shall be 21 inches (535 mm).

## ADAAG Section 4.2.5 Forward Reach.

If the clear floor space only allows forward approach to an object, the maximum high forward reach allowed shall be 48 in (1220 mm) (see Fig. 5(a)). The minimum low forward reach is 15 in (380 mm). If the high forward reach is over an obstruction, reach and clearances shall be as shown in Fig. 5(b).



**Figure 5a**
**High Forward Reach Limit**

Forward reach range shown in profile and plan view to be 48 inches maximum and 15 inches minimum.

**Figure 5b**
**Maximum Forward Reach over an Obstruction**

The maximum level forward reach over an obstruction with knee space below is 25 inches (635 mm). When the obstruction is less than 20 inches (510 mm) deep, the maximum high forward reach is 48 inches (1220 mm). When the obstruction projects 20 to 25 inches (510 mm to 635 mm), the maximum high forward reach is 44 inches (1120 mm). (4.2.5, 4.25.3).

NOTE: x shall be ≤ 25 in (635 mm); x shall be ≥ z. When x < 20 in (510 mm), then y shall be 48 in (1220 mm) maximum. When x is 20 to 25 in (510 to 635 mm), then y shall be 44 in (1120 mm) maximum.

***ADAAG Section 4.2.6 Side Reach.*** *If the clear floor space allows parallel approach by a person in a wheelchair, the maximum high side reach allowed shall be 54 in (1370 mm) and the low side reach shall be no less than 9 in (230 mm) above the floor (Fig 6(a) and Fig. 6(b)). If the side reach is over an obstruction, the reach and clearances shall be as shown in Fig 6(c).*



**Figure 6(a)**
**Clear Floor Space - Parallel Approach**

The 30 by 48 inch clear floor space is located a maximum 10 inches (255 mm) from the wall.



**Figure 6(b)**
**High and Low - Side Reach Limits**

The 30 by 48 inch wheelchair clear floor space is located a maximum 10 inches (255 mm) from the wall.



**Figure 6(c)**
**Maximum Side Reach over Obstruction**

If the depth of the obstruction is 24 inches (610 mm) and the maximum height of the obstruction is 34 inches (865 mm), the maximum high side reach over the obstruction is 46 inches (1170).

***ADAAG Section 4.27.4 Controls and operating mechanisms shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist.*** *The force required to activate controls shall be no greater than 5 lbf (22.2 N).*

***Mechanisms which can be operated with a closed fist will generally satisfy these criteria. Controls which have slide or push-button mechanisms are preferable. All doors within designated accessible rooms and spaces should provide lever-operated or push-type mechanisms to facilitate opening/closing. If locks are provided they should not require tight grasping, pinching, or twisting of the wrist to operate. On***

39

*elements (A/C, lamp, etc.) with controls which require tight grasping, pinching or twisting of the wrist it is preferable to use a slide or push mechanism.*

*Elements which are outside of required reach ranges should be lowered to comply with sections 4.2.5 and 4.2.6 of the ADAAG. Elements which are blocked by furniture or other objects should be made accessible.*

*Proper cane and service animal techniques allow people to walk along a corridor or path without bumping into walls. Overhangs that are above cane sweep height may protrude 4 inches without being hazardous. Objects within the sweep of canes (at or below 27 inches) or above 80 inches can protrude any amount. Wing walls, side partitions, and alcoves or recesses can be used for elements such as drinking fountains with their bottom edges above 27 inches. Fixed elements or barriers can provide detection below objects not required to have knee or toe clearance.*

*The guestroom doors which do not provide the necessary latch-side clearance for exiting the room should be equipped with a power door opener.*

*The fire alarms located in the guestrooms should be either 80 inches above the floor or 6 inches from the ceiling depending on which measurement is lower. ADAAG specifies a signal height 80 inches above the highest floor level within the space or 6 inches below the ceiling, whichever is lower. (This can be measured to the centerline or to the bottom edge of the appliance). The 80 inch height is based on research indicating it to be the most effective for a 75 cd lamp. It is also consistent with the minimum headroom clearance required for protruding objects. What is most important is that strobes, whether projecting from walls or suspended from ceilings, be at least 6 inches below the ceiling plane to minimize smoke obscuration.*

*Tables which do not provide sufficient knee clearance, within an accessible guest room, should have casters which raise them high enough to meet the minimum requirements.*

## VI.  ACCESS TO GOODS AND SERVICES

**A.  Fire-safety information, maximum room rate information, telephone and television information cards, guest services guides, restaurant menus, room service menus, and all other printed materials provided for use by guests are not available in alternate formats so that blind persons and persons with low vision can read them (alternate formats include Braille, large print, and audio recordings) violating the Department of Justice ADA Title III Regulation 28 CFR Part 36.303.**

*Title III Regulation 28 CFR Part Sec.36.303 Auxiliary aids and services.*

*(a) General. A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or*

*otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense.*

*(b) Examples. The term "auxiliary aids and services" includes --*

*(1) Qualified interpreters, notetakers, computer-aided transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments;*

*(2) Qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered available to individuals with visual impairments;*

*(3) Acquisition or modification of equipment or devices; and*

*(4) Other similar services and actions.*

*(c) Effective communication. A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities.*

*(d) Telecommunication devices for the deaf (TDD's). (1) A public accommodation that offers a customer, client, patient, or participant the opportunity to make outgoing telephone calls on more than an incidental convenience basis shall make available, upon request, a TDD for the use of an individual who has impaired hearing or a communication disorder.*

*(2) This part does not require a public accommodation to use a TDD for receiving or making telephone calls incident to its operations.*

*(e) Closed caption decoders. Places of lodging that provide televisions in five or more guest rooms and hospitals that provide televisions for patient use shall provide, upon request, a means for decoding captions for use by an individual with impaired hearing.*

*(f) Alternatives. If provision of a particular auxiliary aid or service by a public accommodation would result in a fundamental alteration in the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or in an undue burden, i.e., significant difficulty or expense, the public accommodation shall provide an alternative auxiliary aid or service, if one exists, that would not result in an alteration or such burden but would nevertheless ensure that, to the maximum extent*

*possible, individuals with disabilities receive the goods, services, facilities, privileges, advantages, or accommodations offered by the public accommodation.*

**Recommendation**

*Provide guest information in alternate formats so that blind persons and persons with low vision can read them (alternate formats include Braille, large print, and audio recordings) in accordance with the Department of Justice's ADA Title III Regulation 28 CFR Part 36.303.*

**B. There are counters at the registration desk and at the AVIS desk which exceed 36 inches in height violating section 7.2 of the ADAAG. There are counters at Zaffino's which exceed 36 inches in height violating section 5.2 of the ADAAG.**



*ADAAG Section 5.2 Counters and Bars. Where food or drink is served at counters exceeding 34 in (865 mm) in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 in (1525 mm) in length minimum shall be provided in compliance with 4.32 or service shall be available at accessible tables within the same area.*

*ADAAG Section 7.2 Sales and Service Counters, Teller Windows, Information Counters.*

*(1) In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 in (915mm) in length with a maximum height of 36 in (915 mm) above the finish floor. It shall be on an accessible route complying with 4.3. Such counters shall include, but are not limited to, counters in retail stores, and distribution centers. The accessible counters must be dispersed*

*throughout the building or facility. In alterations where it is technically infeasible to provide an accessible counter, an auxiliary counter meeting these requirements may be provided.*

*(2) In areas used for transactions that may not have a cash register but at which goods or services are sold or distributed including, but not limited to, ticketing counters, teller stations, registration counters in transient lodging facilities, information counters, box office counters and library check-out areas, either:*

*(i) a portion of the main counter which is a minimum of 36 in (915 mm) in length shall be provided with a maximum height of 36 in (915 mm); or*

*(ii) an auxiliary counter with a maximum height of 36 in (915 mm) in close proximity to the main counter shall be provided; or*

*(iii) equivalent facilitation shall be provided (e.g., at a hotel registration counter, equivalent facilitation might consist of: (1) provision of a folding shelf attached to the main counter on which an individual with a disability can write, and (2) use of the space on the side of the counter or at the concierge desk, for handing materials back and forth).*

*All accessible sales and service counters shall be on an accessible route complying with 4.3.*

> **Recommendation**
>
> *Signage could be placed at Zaffino's counters offering nearby table service upon request. Provide a counter, at the registration desks, such that a portion of it is at least 36 inches wide and no more than 36 inches above the finished floor, or provide an auxiliary counter with a maximum height of 36 inches in close proximity to the main counter, or provide equivalent facilitation. Equivalent facilitation may be provided in the form of a folding shelf attached to the main counter or an auxiliary table nearby. If choosing the latter signage should be placed on the main counter directing a guest toward the auxiliary table and a sign showing the symbol of accessibility should be placed on the table.*

**C. There is an indoor pool at this location. There is no pool lift available violating the Department of Justice's ADA Title III Regulation 28 CFR Part 36.202(a).**



43

*Department of Justice ADA Title III Regulation 28 CFR Part 36.202(a)* Activities.

*(a) Denial of participation. A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.*

**Recommendations**

*Provide a pool lift or equivalent facilitation to the pool for disabled guests. Once a pool lift is available there should be signage informing guests that a pool lift is available.*

**D. There are non-compliant handrails at the steps leading up to Zaffino's violating section 4.9.4 of the ADAAG.**



*ADAAG Section 4.9.4 Handrails. Stairways shall have handrails at both sides of all stairs. Handrails shall comply with 4.26 and shall have the following features:*

*(1) Handrails shall be continuous along both sides of stairs. The inside handrail on switchback or dogleg stairs shall always be continuous (see Fig. 19(a) and (b)).*

*(2) If handrails are not continuous, they shall extend at least 12 in (305 mm) beyond the top riser and at least 12 in (305 mm) plus the width of one tread beyond the bottom riser. At the top, the extension shall be parallel with the floor or ground surface. At the bottom, the handrail shall continue to slope for a distance of the width of one tread from the bottom riser; the remainder of the extension shall be horizontal (see Fig. 19(c) and (d)). Handrail extensions shall comply with 4.4.*

*(3) The clear space between handrails and wall shall be 1-1/2 in (38 mm).*

*(4) Gripping surfaces shall be uninterrupted by newel posts, other construction elements, or obstructions.*

*(5) Top of handrail gripping surface shall be mounted between 34 in and 38 in (865 mm and 965 mm) above stair nosings.*

*(6) Ends of handrails shall be either rounded or returned smoothly to floor, wall or post.*

*(7) Handrails shall not rotate within their fittings*



| | **Figure 19c**<br>**Stair Handrails - Extension at Bottom of Run**<br><br>NOTE:<br>X is the 12 in minimum handrail extension required at each top riser.<br>Y is the minimum handrail extension of 12 in plus the width of one tread that is required at each bottom riser. |
|---|---|
| | **Figure 19d**<br>**Stair Handrails - Extension at Top of Run**<br><br>NOTE:<br>X is the 12 in minimum handrail extension required at each top riser.<br>Y is the minimum handrail extension of 12 in plus the width of one tread that is required at each bottom riser. |

**Recommendations**

**Provide ADA compliant handrails at the stairs.**

**E. There are light fixtures and shelving (in the pool area shower room) which project out more than 4 inches from the wall and are mounted with the bottom edge between than 27 and 80 inches from the floor violating section 4.4.1 of the ADAAG.**

 

*ADAAG Section 4.4.1 General. Objects projecting from walls (for example, telephones) with their leading edges between 27 in and 80 in (685 mm and 2030 mm) above the finished floor shall protrude no more than 4 in (100 mm) into walks, halls, corridors, passageways, or aisles. Objects mounted with their leading edges at or below 27 in (685 mm) above the finished floor may protrude any amount. Free-standing objects mounted on posts or pylons may overhang 12 in (305 mm) maximum from 27 in to 80 in (685 mm to 2030 mm) above the ground or finished floor. Protruding objects shall not reduce the clear width of an accessible route or maneuvering space.*

45

*Recommendations*

*Replace light fixtures and other protruding objects with ones which do not protrude more than 4 inches from the wall. Other options include placing cane-detectable objects below them or relocating them whereas the bottom edge will be lower than 27 inches high or above 80 inches high.*

**F. There are tables, lacking the required knee clearances, at Zaffino's, the Business Office and the "Bakery Express" for use by persons using a wheelchair violating section 4.32.3 of the ADAAG.**

  

*ADAAG Section 4.32.3 Knee Clearances. If seating for people in wheelchairs is provided at tables or counters, knee spaces at least 27 in (685 mm) high, 30 in (760 mm) wide, and 19 in (485 mm) deep shall be provided (see Fig. 45).*



Fig. 45
Minimum Clearances for Seating and Tables

*Recommendations*

*Provide a number of tables, at each location, which provide the required clearances.*

**G. There are public phone banks which do not provide any of the phones with the highest control within required reach ranges violating section 4.31.3 of the ADAAG. There are house phones which do not provide volume controls violating section 4.31.5 of the ADAAG. None of the banks of public telephones provide a shelf and an electrical outlet, for use of a TTY, violating section 4.31.9.**



*ADAAG Section 4.31 Telephones.*

*4.31.1 General. Public telephones required to be accessible by 4.1 shall comply with 4.31.*

*4.31.2 Clear Floor or Ground Space. A clear floor or ground space at least 30 in by 48 in (760 mm by 1220 mm) that allows either a forward or parallel approach by a person using a wheelchair shall be provided at telephones. The clear floor or ground space shall comply with 4.2.4. Bases, enclosures, and fixed seats shall not impede approaches to telephones by people who use wheelchairs.*

*4.31.3 Mounting Height. The highest operable part of the telephone shall be within the reach ranges specified in 4.2.5 or 4.2.6.*

*4.31.4 Protruding Objects. Telephones shall comply with 4.4.*

*4.31.5 Hearing Aid Compatible and Volume Control Telephones Required by 4.1.*

*(1) Telephones shall be hearing aid compatible.*

*(2) Volume controls, capable of a minimum of 12 dbA and a maximum of 18 dbA above normal, shall be provided in accordance with 4.1.3. If an automatic reset is provided then 18 dbA may be exceeded.*

*4.31.6 Controls. Telephones shall have pushbutton controls where service for such equipment is available.*

*4.31.7 Telephone Books. Telephone books, if provided, shall be located in a position that complies with the reach ranges specified in 4.2.5 and 4.2.6.*

*4.31.8 Cord Length. The cord from the telephone to the handset shall be at least 29 in (735 mm) long.*

*4.31.9 Text Telephones (TTYs) Required by 4.1.*

*(1) Text telephones (TTYs) used with a pay telephone shall be permanently affixed within, or adjacent to, the telephone enclosure. If an acoustic coupler is used, the telephone cord shall be sufficiently long to allow connection of the text telephone (TTY) and the telephone receiver.*

*(2) Pay telephones designed to accommodate a portable text telephone (TTY) shall be equipped with a shelf and an electrical outlet within or adjacent to the telephone enclosure. The telephone handset shall be capable of being placed flush on the surface of the shelf. The shelf shall be capable of accommodating a text telephone (TTY) and shall have 6 in (152 mm) minimum vertical clearance in the area where the text telephone (TTY) is to be placed.*

*(3) Equivalent facilitation may be provided. For example, a portable text telephone (TTY) may be made available in a hotel at the registration desk if it is available on a 24-hour basis for use with nearby public pay telephones. In this instance, at least one pay telephone shall comply with paragraph 2 of this section. In addition, if an acoustic coupler is used, the telephone handset cord shall be sufficiently long so as to allow connection of the text telephone (TTY) and the telephone receiver. Directional signage shall be provided and shall comply with 4.30.7.*

*Recommendations*

*A wheelchair accessible public phone is required at all interior and exterior pay phone "banks" (i.e., two or more adjacent phones). If phones are installed as single units, one per floor must be accessible. Generally, access can be provided with either a forward or side approach. Where multiple banks are provided on a floor (or exterior site), at least one accessible phone must provide a forward approach (considered more convenient in the use of phones). Clear floor space is required to the face of the unit; a portion can be provided below the unit where clearance is available for toes/knees. (Since the seated forward reach does not extend far beyond the toes, knee space can make it easier to reach to the phone). The maximum reach depth for a high (54 inch maximum) reach is 10 inches, measured from the clear floor space.*

*ADAAG requires that wheelchair accessible public phones, including pay and closed circuit phones, provide a volume control and be hearing aid compatible. In addition, 25% of all other public phones are required to have a volume control. Phones with volume control must be dispersed among all public-use phones, including closed circuit phones, throughout the facility. Volume controls on pay phones are located in either the base or the handset and are built into the telephone instrument as purchased or leased from a vendor. Most are located in the base and operated by pressing a button or key. Volume controls located in handsets are often used in retrofitting existing*

*phones. Telephones required to have a volume control must be identified by a sign containing a depiction of a telephone handset with radiating sound waves.*

*TTYs provide some form of keyboard input and visual display output. Devices typically include an acoustic coupler for the telephone handset, a simplified keyboard, and a visible message display. Typed messages are converted into audible tones transmitted through the phone line to a receiving unit. Early models were known as TTYs (from their origin in teletype technology). Smaller, more portable versions developed later were called TDD's (telecommunications devices for deaf persons), a term still used on the signage symbol used to identify them. ADAAG refers to these devices as text telephones but the abbreviation "TTY" is preferred by most TTY users.*

*Some people travel with their own portable TTY units. ADAAG includes provisions for portable units shelves and power outlets) at all banks with 3 or more pay phones. (Those who travel with laptop computers will also find these provisions useful). The shelf must provide a vertical clearance of at least 6 inches so that different types of portable TTY devices can be connected. Recommendations: A shelf at least 10 inches square will accommodate most models. Phones should have a standard handset so that they fit the typical TTY coupler. The power outlet must be in or adjacent to the telephone enclosure (typical TTY cord is about 3 feet long).*

**H. There are signs to permanent rooms and spaces which do not comply with sections 4.1.3(16)(a) and 4.30 of the ADAAG by not being mounted at the required location or the finish and contrast of the sign.**

  

*ADAAG Section 4.1.3(16) Building Signage:*

*(a) Signs which designate permanent rooms and spaces shall comply with 4.30.1, 4.30.4, 4.30.5 and 4.30.6.*

*(b) Other signs which provide direction to or information about functional spaces of the building shall comply with 4.30.1, 4.30.2, 4.30.3, and 4.30.5.*

*ADAAG Section 4.30 Signage.*

*4.30.1\* General. Signage required to be accessible by 4.1 shall comply with the applicable provisions of 4.30.*

49

**4.30.2\* Character Proportion.** *Letters and numbers on signs shall have a width-to-height ratio between 3:5 and 1:1 and a stroke-width-to-height ratio between 1:5 and 1:10.*

**4.30.3 Character Height.** *Characters and numbers on signs shall be sized according to the viewing distance from which they are to be read. The minimum height is measured using an upper case X. Lower case characters are permitted.*

**4.30.4\* Raised and Brailled Characters and Pictorial Symbol Signs (Pictograms).** **Letters and numerals shall be raised 1/32 in (0.8 mm) minimum, upper case, sans serif or simple serif type and shall be accompanied with Grade 2 Braille. Raised characters shall be at least 5/8 in (16 mm) high, but no higher than 2 in (50 mm).** *Pictograms shall be accompanied by the equivalent verbal description placed directly below the pictogram. The border dimension of the pictogram shall be 6 in (152 mm) minimum in height.*

**4.30.5\* Finish and Contrast.** *The characters and background of signs shall be eggshell, matte, or other non-glare finish. Characters and symbols shall contrast with their background -- either light characters on a dark background or dark characters on a light background.*

**4.30.6 Mounting Location and Height.** **Where permanent identification is provided for rooms and spaces, signs shall be installed on the wall adjacent to the latch side of the door. Where there is no wall space to the latch side of the door, including at double leaf doors, signs shall be placed on the nearest adjacent wall. Mounting height shall be 60 in (1525 mm) above the finish floor to the centerline of the sign. Mounting location for such signage shall be so that a person may approach within 3 in (76 mm) of signage without encountering protruding objects or standing within the swing of a door.**

**Recommendation**

**Provide signage to the permanent rooms and spaces as specified in section 4.30 of the ADAAG.**

**I. There are showers located near the pool which have curbs in excess of the maximum required in section 4.21.7 of the ADAAG.**

 

*ADAAG Section 4.21.7  Curbs. If provided, curbs in shower stalls 36 in by 36 in (915 mm by 915 mm) shall be no higher than 1/2 in (13 mm). Shower stalls that are 30 in by 60 in (760 mm by 1525 mm) minimum shall not have curbs.*

**Recommendation**

**Provide at least one of the showers with a curb no higher than ½ inch.**

**J. There is an exercise room which has no equipment for use by persons in wheelchairs violating the Department of Justice's ADA Title III Regulation 28 CFR Part 36.202(a).**



*Department of Justice ADA Title III Regulation 28 CFR Part 36.202(a) Activities.*

*(a) Denial of participation. A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.*

**Recommendations**

**Provide equipment for use by persons in wheelchairs. There are companies such as GPK Uppertone which manufacture such equipment.**

## VII.  ALARMS

There are areas throughout the facility (I.E. Courtyard West meeting room) where alarms are required but not found violating section 4.28 of the ADAAG. Also, there are alarms which are not mounted at the required heights violating section 4.28.3(6) of the ADAAG.



**ADAAG Section 4.28 Alarms.**

**4.28.1 General.** Alarm systems required to be accessible by 4.1 shall comply with 4.28.
**At a minimum, visual signal appliances shall be provided in buildings and facilities in
each of the following areas: restrooms and any other general usage areas (e.g.,
meeting rooms), hallways, lobbies, and any other area for common use.**

**4.28.2 Audible Alarms.** If provided, audible emergency alarms shall produce a sound
that exceeds the prevailing equivalent sound level in the room or space by at least 15 dbA
or exceeds any maximum sound level with a duration of 60 seconds by 5 dbA, whichever
is louder. Sound levels for alarm signals shall not exceed 120 dbA.

**4.28.3 Visual Alarms. Visual alarm signal appliances shall be integrated into the
building or facility alarm system.** If single station audible alarms are provided then
single station visual alarm signals shall be provided. Visual alarm signals shall have the
following minimum photometric and location features:

**(6) The appliance shall be placed 80 in (2030 mm) above the highest floor level within
the space or 6 in (152 mm) below the ceiling, whichever is lower.**

**(7) In general, no place in any room or space required to have a visual signal
appliance shall be more than 50 ft (15 m) from the signal (in the horizontal plane).** In
large rooms and spaces exceeding 100 ft (30 m) across, without obstructions 6 ft (2 m)
above the finish floor, such as auditoriums, devices may be placed around the perimeter,
spaced a maximum 100 ft (30 m) apart, in lieu of suspending appliances from the ceiling.

**(8) No place in common corridors or hallways in which visual alarm signaling
appliances are required shall be more than 50 ft (15 m) from the signal.**

**4.28.4 Auxiliary Alarms. Units and sleeping accommodations shall have a visual alarm
connected to the building emergency alarm system or shall have a standard 110-volt
electrical receptacle into which such an alarm can be connected and a means by which
a signal from the building emergency alarm system can trigger such an auxiliary
alarm. When visual alarms are in place the signal shall be visible in all areas of the
unit or room. Instructions for use of the auxiliary alarm or receptacle shall be
provided.**

### Recommendation

Provide a visual/audio alarm appliances in restrooms and any other general usage areas (e.g., meeting rooms), hallways, lobbies, and any other area for common use. Alarms must be placed 80 inches above the highest floor level within the space or 6 inches below the ceiling, whichever is lower.

In general, it is not sufficient to install visual signals only at audible alarm locations. Audible alarms installed in corridors and lobbies can be heard in adjacent rooms but a visual signal can be observed only within the space it occupies. Visual alarms are required in hallways, lobbies, restrooms, and any other general usage and common use areas, such as meeting and conference rooms, classrooms, cafeterias, employee break rooms, dressing rooms, examination rooms and similar spaces. Visual alarms are not required in areas used solely as employee work areas or in mechanical, electrical, or telephone closets, janitor's closets, or similar non-occupiable spaces.

ADAAG specifies a signal height 80 inches above the highest floor level within the space or 6 inches below the ceiling, whichever is lower. (This can be measured to the centerline or to the bottom edge of the appliance). The 80 inch height is based on research indicating it to be the most effective for a 75 cd lamp. It is also consistent with the minimum headroom clearance required for protruding objects. However, photometric calculations of lamp intensity for mounting heights of 80 and 96 inches show only nominal differences and can be practically considered to be equivalent. What is most important is that strobes, whether projecting from walls or suspended from ceilings, be at least 6 inches below the ceiling plane to minimize smoke obscuration.

**Policies and Procedures**

A lodging facility should have in place policies and procedures in compliance with the Department of Justice's ADA Title III Regulation 28 CFR Part 36.302(a).

*ADAAG section 36.302(a) Modifications in policies, practices, or procedures.*

*(a) General. A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.*

1. A policy so staff is properly trained and familiarized with the available disabled features of the hotel including the number of disabled rooms by category, the available elements used in accessible rooms (i.e. TTY equipment, accessible routes, areas of rescue, etc.)

2. Inform front desk personnel of the procedure to assist disabled guests using wheelchairs at the lower counter during check-in, check-out and any other transaction.

3. Establish a policy whereas housekeeping incorporates lowering shower spray units when cleaning accessible shower stalls.

4. Implement a policy of advising disabled guests of the availability of ADA compliant tub seats.

5. Staff should read fully, upon request, and provide assistance, if necessary, in completing registration folios, hotel bills, service request forms, menus, and other documents. You may find it more helpful to your guest to provide frequently used documents such as menus or important documents such as contracts in Braille, tape, or large print. When reading a menu, personnel should first read broad categories of items and allow the guest to choose which categories should be fully read.

6. When handing currency to a guest, bills should be individually identified and counted. A person who is blind or visually impaired usually identifies currency by folding it in different ways and/or by placing denominations in separate locations in a wallet or purse. Identifying coins is usually not a problem because of their varying sizes and milled edges. Credit cards should be handed to guests after imprint, not simply laid on a counter or table. A piece of cardboard or a plastic or metal signature template can be used to indicate where a signature is required. Place cardboard edge horizontally below line or orient opening of signature template where signature is required.

7. Implement a policy which will include verbal descriptions, hands-on demonstrations, and/or provision of tactile maps, large-print maps, or recorded materials as aids to wayfinding for disabled guests.

8. Implement policies requiring that accessible rooms will not be reserved for non-disabled persons unless all other rooms in a facility have been reserved and accessible rooms are the only ones available.

9. Implement policies that the central reservations office will be able to guarantee accessible rooms for a customer's request, provided such rooms are available.

10. Implement policies that the guest relations office will maintain a list of accessible rooms and will keep the list updated.

11. Implement policies whereas employees will receive training so that they are generally familiar with the obligations of places of lodging under the ADA.

12. Implement a policy whereas the company's website for booking reservations or other information is accessible. Accessibility requirements are set forth in the Web Accessibility Initiative of the World Wide Consortium (W3C). Following an investigation by the New York Attorney General, Elliot Spitzer, two US travel sites, Ramada.com and Priceline.com have both agreed to make changes to their respective websites to ensure they are more accessible to the blind and visually impaired. The main change the two companies were required to make is to ensure that users with screen reader software and other similar technology can navigate their way through the websites by listening to the text. To be accessible in this manner, a web site must use code that is comprehensible to screen reader software. For more information visit http://www.ada.gov/websites2.htm

13. Implement a policy whereas accessible parking spaces are monitored to prevent illegal parking within the spaces or access aisles.

14. Implement an evacuation plan. A US court has declared that the Americans with Disabilities Act (the ADA ) requires places of public accommodation to consider the needs of people with disabilities in developing emergency evacuation plans. This groundbreaking decision - issued on December 28th, 2004 by Judge John W. Debelius III of the Circuit Court for Montgomery County, Maryland - means that shopping malls, stores, restaurants, movie theaters, museums, and other private entities subject to the ADA throughout the country, whether landlords or tenants, must now seek to accommodate people with disabilities in the development and modification of emergency evacuation procedures.

15. Implement a policy maintaining in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities.

3732 NW 23 Manor            Phone 954-942-1882
Coconut Creek, FL 33066    Cellular 954-260-4588
E-mail pwb1966@bellsouth.net    Fax 954-781-1282

# Pablo Baez

**Summary of qualifications**

Accessibility Inspector / Plans Examiner
Certificate Number 5254782-21

**Professional experience**

| | |
|---|---|
| 1985 -1987 | New York Life Insurance Co., New York, NY<br>Data Distribution Clerk |
| 1987 -1989 | New York Life Insurance Co., New York, NY<br>Computer Operator |
| 1989-1994 | Xerox Corp., Miami, FL<br>Customer Support Representative |
| 1994-1997 | Xerox Corp., Miami, FL<br>Account Support Representative |
| 1997-2004 | Legal Guardian / Caregiver of Mario Baez an incapicated<br>person suffering from Cerebral Palsy. Provided therapy,<br>homecare, transportation and handled day-to-day matters.<br>Observed, first-hand, architectural barriers when traveling. |
| 2004-2005 | Access-Ability Inc., Pompano Beach, FL<br>ADA accessibility apprenticeship |
| 2005 | Accessibility Inspector / Plans Examiner Certification |
| 2005 - | Access-Ability Inc., Pompano Beach, FL<br>Accessibility Inspector / Plans Examiner, ADA Consultant |
| 2005 - | Herbert Neff & Associates<br>Accessibility Inspector / Plans Examiner, ADA consultant |

**Notable Inspections /
ADA Compliance Reports**

Amsterdam Court Hotel, New York, NY - Plaintiff's Expert

Ameritania Hotel, New York, NY - Plaintiff's Expert
The Atlantic Hotel, Ft. Lauderdale, FL – Plaintiff's
Expert

Quality Inn & Suites, Sebring, FL - Plaintiff's Expert
Quality Inn, Atlantic City, NJ - Plaintiff's Expert
Ramada Plaza, Pleasantville, NJ - Plaintiff's Expert
Courtyard by Marriott, Woburn, MA – Plaintiff's
Expert

Miami Subs, Davie FL – ADA Consultant
Vordermeier Mgmt. Co., Fort Lauderdale, FL –
Defendant's Expert
Royal Country Mobile Home Park, Miami, FL –
ADA Consultant

**Languages**

English, Spanish

**Peter A. Spalluto**

**1966**

- U.S. Army – diving accident resulting in (quadriplegia) wheelchair use.

**1968**

- Completed drivers training for physically impaired, Veterans Administration Hospital, Bronx, New York.

**1969**

- Founding member of the A.D.L. Clinic V.A. Hospital, East Orange, New Jersey.
  Reference: Barbara Odenthal, Chief Occupational Therapist.

**1972**

- Staff Researcher, Bioengineering Dept., Veterans Administration, Manhattan, New York.
  Reference: Ron Arrayo.

  Associate Builder P.L. 702 Home Total Access, Barrier Free Construction.
  Reference: Angelo Puzino, Wall Township, New Jersey.

**EDUCATION**

**1966**

- New York City Community College, New York.
  Associates Degree, Hotel and Restaurant Technology.

**1973**

- Ocean County College, New Jersey.
  Associates Degree, Business Administration.

**1976**

- Monmouth College, New Jersey.
  Bachelor of Science Degree, Business Administration, Government and Psychology.

- Internship with Department of Alcoholic Beverages, Washington, D.C.

**1992**

- Certified Pedestrian Design Training Course of Florida Department of Transportation

**1993**
- Certified Advanced Pedestrian Facilities Design Training Course of Florida Department of Transportation.

**1994**
- C.E.U. accredited course, Florida Accessibility Code & The Americans With Disabilities Act Standards.

**1999**
- UPDATED C.E.U. accredited course, Florida Accessibility Code & the Americans with Disabilities Act Compliance Standards.

**2003**
- Harvard University, Graduated School Of Design. Universal Design and the New ADA/ABA Guidelines

## BUSINESS

**1976**
- President, Long After Productions, Inc., Brick, New Jersey. Co-Developer, Local Original Programming, Crosswicks Cable, Point Pleasant, New Jersey.

**1977**
- Producer, C. A.T. Benihana Boat Race, Point Pleasant, New Jersey.

**1982-1989**
- Owner, Vending Company, President, Digity Dogs, Inc., Atlantic City, New Jersey.

**1990 – 1992**
- Research and Co-Owner for Barrier Free Systems, Inc., Fort Lauderdale, Florida.

- Sitting on the Americans with Disabilities Public Information Committee under the guise of Broward County Human Relations Division.

- President and Co-Owner Barrier Free Systems, Inc., Brick, New Jersey.

**1993 – To Present**
- Consultant / Planner , Access-Ability, Inc. Pompano Beach, Florida.

**1994**
- Instructor – Broward Center for Independent Living, Peer Counselors Training Program / ADA Compliance Seminar.

- Member of FPVA Advocacy Committee For the Disabled.

**1997 – To Present**
- Expert Consultation for ADA Litigation and Renovations.

**2003 – To Present**
- August / 2003 Participant , Harvard Graduate School of Design "Universal Design / New ADA / ABA Guidelines

- 10/01/03 International Code Council Certification, Accessibility Inspector/ Plans Examiner.  Certificate # 5212877-21

60

This report was prepared by Pablo Baez and Peter Spalluto.

_____
Pablo Baez

_____
Peter Spalluto

# ACCESS-ABILITY, INC.

*610 E. Sample Road, Pompano Beach, FL 33064*
*VOICE: (954) 942-1882 FAX (954) 781-1282*
*CGC # 0541895   FED ID # 650386560*

**RESUME**

**Peter A. Spalluto**

**1966**
- U.S. Army- diving accident resulting in (quadriplegia) wheelchair use.

**1968**
- Completed drivers training for physically impaired, Veterans Administration Hospital, Bronx, New York.

**1969**
- Founding member of the A.D.L. Clinic V.A. Hospital, East Orange, New Jersey.
  Reference: Barbara Odenthal, Chief Occupational Therapist.

**1972**
- Staff Researcher, Bioengineering Dept., Veterans Administration, Manhattan, New York.
  Reference: Ron Arrayo.
- Associate Builder P.L. 702 Home Total Access, Barrier Free Construction.
  Reference: Angelo Puzino, Wall Township, New Jersey.

**EDUCATION**

**1966**
- New York City Community College, New York.
  Associates Degree, Hotel and Restaurant Technology.

**1973**
- Ocean County College, New Jersey.
  Associates Degree, Business Administration.

**1976**
- Monmouth College, New Jersey.
  Bachelor of Science Degree, Business Administration, Government and Psychology.
- Internship with Department of Alcoholic Beverages, Washington, D.C.

**1992**
- Certified Advanced Pedestrian Facilities Design Training Course of Florida Department of Transportation.

**1994**
- C.E.U. Accredited course, Florida Accessibility Code & The Americans with Disabilities Act Compliance Standards.

**2003**
- Universal Design and the New ADA/ABA Guidelines of Harvard University, Graduate School of Design.

## BUSINESS

**1976**
- President, Long After Productions, Inc., Bricktown, New Jersey.
  Co-Developer, Local Original Programming, Crosswicks Cable, Point Pleasant, New Jersey.

**1977**
- Producer, C.A.T. Benihana Boat Race, Point Pleasant, New Jersey.

**1982-1989**
- Owner, Vending Company, President, Digity Dogs, Inc., Atlantic City, New Jersey.

**1990-1992**
- Research and Co-Owner for Barrier Free Systems, Inc., Fort Lauderdale, Florida.
- Sitting on the Americans with Disabilities Public Information Committee under the guise of Broward County Human Relations Division.
- President and Co-Owner Barrier Free Systems, Inc., Bricktown, New Jersey.

**1993- to Present**
- Consultant - Access-Ability, Inc. Pompano Beach, Florida (Company specializing in Americans with Disabilities modifications and evaluations.)

**1994**
- Instructor- Broward Center for Independent Living, Peer Counselors Training Program/ Led ADA Compliance Seminar.
- Member FPVA Advocacy Committee for the Disabled.

**1997- To Present**
- Expert Consultation for ADA Litigation.

**2003- To Present**
- Certified Accessibility Plan Inspector/Examiner by International Code Council.

3732 NW 23 Manor            Phone 954-942-1882
Coconut Creek, FL 33066     Cellular 954-260-4588
E-mail pwb1966@bellsouth.net   Fax 954-781-1282

## Pablo Baez

| | |
|---|---|
| **Summary of qualifications** | Accessibility Inspector / Plans Examiner<br>Certificate Number 5254782-21 |

| **Professional experience** | | |
|---|---|---|
| 1985 -1987 | New York Life Insurance Co., New York, NY<br>Data Distribution Clerk |
| 1987 -1989 | New York Life Insurance Co., New York, NY<br>Computer Operator |
| 1989-1994 | Xerox Corp., Miami, FL<br>Customer Support Representative |
| 1994-1997 | Xerox Corp., Miami, FL<br>Account Support Representative |
| 1997-2004 | Legal Guardian / Caregiver of Mario Baez an incapicated person suffering from Cerebral Palsy. Provided therapy, homecare, transportation and handled day-to-day matters. Observed, first-hand, architectural barriers when traveling. |
| 2004-2005 | Access-Ability Inc., Pompano Beach, FL<br>ADA accessibility apprenticeship |
| 2005 | Accessibility Inspector / Plans Examiner Certification |
| 2005 - | Access-Ability Inc., Pompano Beach, FL<br>Accessibility Inspector / Plans Examiner, ADA Consultant |
| 2005 - | Herbert Neff & Associates<br>Accessibility Inspector / Plans Examiner, ADA consultant |

| | |
|---|---|
| **Notable Inspections /**<br>**ADA Compliance Reports** | Amsterdam Court Hotel, New York, NY - Plaintiff's Expert |
| | Ameritania Hotel, New York, NY - Plaintiff's Expert |
| | The Atlantic Hotel, Ft. Lauderdale, FL – Plaintiff's Expert |
| | Quality Inn & Suites, Sebring, FL - Plaintiff's Expert |
| | Quality Inn, Atlantic City, NJ - Plaintiff's Expert |
| | Ramada Plaza, Pleasantville, NJ - Plaintiff's Expert |
| | Courtyard by Marriott, Woburn, MA – Plaintiff's Expert |
| | Miami Subs, Davie FL – ADA Consultant |
| | Vordermeier Mgmt. Co., Fort Lauderdale, FL – Defendant's Expert |
| | Royal Country Mobile Home Park, Miami, FL – ADA Consultant |
| **Languages** | English, Spanish |

**HERBERT J. NEFF**
2500 N. Federal Hwy. #223
Boca Raton, Florida 33431
**Voice: (561)338-7594   Fax: (561)338-2903**

**SUMMARY:**

Diverse line and staff responsibility in financial, distribution, high-tech, real estate, and construction business operations provides broad perspective for business planning and development. Selected areas of performance include:

- Financial Planning
- Market Research and Analysis
- Sales/Customer Relations
- Presentations
- Construction Management

- Property Management
- Distribution Systems
- Inventory Control Systems
- Personnel Evaluation
- ADA Expert

**RECENT EXPERIENCE**

**General Contractor Qualifier for** Access-Ability, Inc.
Pompano Beach, Florida (1998 - Present)
Construction supervision, building permits, construction design, and ADA evaluations

**Independent Consultant as Americans with Disabilities Act (ADA) Expert**
Boca Raton, Florida (1998 - Present)
Representing plaintiffs and defendants re ADA violations

**Marketing Consultant,** Advanced Aquatronics International, Inc.
Lighthouse Point, Florida (1991 - Present)
Provide missionary service for new market areas and client types for high-tech water conditioning systems

**Executive Assistant to Director of Operations,** Turnberry Associates
Aventura, Florida (1985 - 1991) & (1980 - 1983)
Responsibilities included property development project administration, accounting/controlling, business planning, financial analysis, preparation of special reports.

**Independent Consultant** (1983 - 1985)
Provided management and financial counseling. Clients included Florida Business Centers, Peninsular General Builders, and executive search assignments to firms in Broward and Dade Counties, Florida.

**Vice President,** Barco Finance Corporation
Miami, Florida (1979 - 1980)
Responsibilities included appraisal and evaluation of financing prospects in industrial, commercial, and real estate industries. Monitored borrowers' financial and operational conditions.

**Owner, H.J. Neff & Associates,**
Miami, Florida (1971 - 1978)
Consultant in business planning and executive search to real estate, commercial, and industrial firms.

**Manager, Corporate Planning,** E-Systems, Inc.
Dallas, Texas (1966 - 1970)
Coordinated five year plan for five operating divisions with 10,000 employees and total business of over $200 million. Monitored R&E budgets of $14 million. Reviewed merger and acquisition prospects.

**EDUCATION:**

A.B. cum laude in Economics, Harvard University
Armed Forces Institute, Business Seminars
Licensed Florida Real Estate Broker; Florida General Contractor



# *GARY W. DIX, C.P.A, C.V.A*
# *PROFILE*

### *Personal and Education:*

Bachelor of Business Administration
Bernard Baruch College of the City University of New York - 1969

### *Professional Background:*

Mallah, Furman and Company, P.A. - 1994

- Merged and named a Director in 1994

Silver, Dix and Hammer, C.P.A. - 1979 to 1993

- Founding partner of a local C.P.A. firm

Harris, Kerr, Forster & Company - 1975 to 1978

- Manager, Tax Department
- Responsible for tax planning and compliance

Deloitte, Haskins & Sells - 1970 to 1974

- Staff Accountant
- Two years on Audit Staff
- Two years on Tax Staff
- Promoted to Senior Accountant
- 

### *Professional Experience:*

A member of the Tax Department of Deloitte, Haskins & Sells and Harris, Kerr, Forster & Company.

As a Director at Mallah, Furman and Company, Mr. Dix has specialized in business consulting, valuations, financing arrangements and tax planning.  Since 1997, Mr. Dix has been the Director in Charge of The Business Valuation Division of Mallah, Furman and Company, P.A.

The Firm's valuation engagements encompass family limited partnerships, real estate ventures, wholesale distributors, medical practices, other professional practices, restaurants and retail establishments.

# *GARY W. DIX, C.P.A, C.V.A.*
## *PROFILE - Continued*

### *Professional Licenses:*

- Certified Public Accountant
- Certified Valuation Analyst

### *Outside Professional Activities:*

Outside professional activities have included various seats on Board of Directors relating to the following:

- Member of the Board of Directors: Perry Ellis International, Inc., A NASD listed company; Chairman, Internal Audit Committee
- Member of the Board of Directors of the Dr. John T. Macdonald Foundation, Inc.
- Member of the Board of Directors of Westview Country Club
- Founding Shareholder and Director of the Universal National Bank, a Dade County Community Bank (sold in 1997)