UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (SPRINGFIELD)

ACCESS 4 ALL, INC., a Not for Profit
Corporation, and FELIX ESPOSITO,
Individually,

                                                    Case No. 3:04-cv-12347-KPN

       Plaintiffs,

v.

DELANCEY CLINTON ASSOCIATES, L.P., a
Pennsylvania Limited Partnership,

       Defendant.

_____/

## RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' VERIFIED APPLICATION FOR ATTORNEYS' FEES, COSTS AND EXPERT'S FEES AND ACCOMPANYING MEMORANDUM OF LAW

COMES NOW the Plaintiffs, Access 4 All, Inc., a Florida not-for-profit corporation ("Access") and Felix Esposito ("Esposito"), individually, by and through his undersigned attorneys, pursuant to Judge Neiman's August 17, 2006 Order Granting Without Opposition Plaintiffs' Motion for Leave to File Reply, hereby submit Plaintiffs' Response to Defendant's Opposition to Plaintiffs' Verified Application for Fees. Plaintiffs submit that the rates, hours worked and work undertaken were reasonable. As such, the Plaintiffs respectfully submit that the Court award fees in the amount requested in the Plaintiffs' Fee Application [DE 36], as well as the additional costs incurred in this Response.

## STATEMENT OF THE CASE

Plaintiffs commenced this case on November 4, 2004 and eventually were able to serve the Defendant for alleged violations of the Americans with Disabilities Act ("ADA") in March, 2005. The issues related to the service problems will be addressed below. Suffice it to say, Defendant was

not cooperative in the service process and also submitted inaccurate information to the Pennsylvania

Secretary of State on its principal office in Philadelphia, Pennsylvania (see II.A below). This resulted

in requiring Plaintiffs to spend additional time and resources in properly serving them. While

Plaintiffs' counsel, as a national ADA law firm, does represent other Plaintiffs in ADA suits in

Massachusetts, its representation includes Plaintiffs from both Florida and Massachusetts. For

example, George Iverson is a Massachusetts resident. While the fact that the Plaintiffs' counsel

represents Plaintiffs in other ADA cases should have no ultimately bearing on the case at bar,

Plaintiffs wanted to correct the Defendant's improper assertion that the Plaintiffs listed in FN 1 of

Defendant's Opposition to Plaintiffs' Verified Application for Fees ("Opposition") were all Florida

residents. As a nationally recognized ADA law firm, Plaintiffs' counsel receive requests from

individuals throughout the country for representation.

Lastly, the Plaintiffs and Defendant both vigorously litigated this lawsuit. An Answer and

Affirmative Defenses were filed by the Defendant denying liability and contesting Plaintiffs'

standing and whether the Plaintiffs stated a cause of action or exhausted their administrative

remedies [DE 9]. Numerous court hearings took place. Discovery was commenced and responded

to by both parties, and inspections as well as months of negotiating took place. Fortunately, the

parties were ultimately able to reach an agreement on the underlying civil rights issues and the

Plaintiffs expect that the Court will make a fair determination of the reasonable fees, costs and

expenses in the case.

## I.    Attorneys' Rates are Reasonable

### A. Plaintiffs Provided Essentially all Core Activities

Defendant is correct in asserting that Plaintiffs did not differentiate between core and non-

2

core activities. Plaintiffs argue that all of the work performed in the case was core in the sense that it was undertaken in an effort to have Defendant comply with the ADA civil rights laws of this nation. To distinguish between what individual task achieved what individual goal seems a waste of resources and counter to the goal of having the Defendant have his place of public accommodation be accessible.

In <u>Alfonso v. Aufiero</u>, 66 F.Supp. 2d 183, 192 (D. Mass. 1999) as cited by the Defendant the Court holds that core legal work "includes legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders." Core time was further defined as legal research "drafting and editing legal documents for submission to the Court and defendants, reviewing legal submissions of opposing parties, appearing in court and preparing for hearings and trials, preparing for and taking depositions, and performing other tasks involving independent legal thought. This time included hours spent meeting with plaintiffs in the days immediately preceding the trial." Most, if not all, of Plaintiffs' counsels entries meet this definition, not solely two as the Defendant alleges. For example:

- Legal research was included in the entries of **JPF** on 9/21/04; 10/9/04 (1st, 2nd, third, fifth and sixth entries); 2/18/05 (3rd entry); 4/14/05 (1st, 2nd, 4th and 6th entries); 5/5/06; 5/10/05 (both entries); 5/18/05 (both entries); 6/2/05 (1st entry); 6/7/2005 (1st entry); 6/8/05 (both entries); 7/7/05; 7/14/05 (1st entry); 7/19/05 (1st and 4th entry, preparation for conference); 7/20/05 (6th entry); 7/21/05 (1st entry); 7/25/05 (both entries); 8/30/05 (3rd entry); 9/8/05 (entire 3rd entry or second paragraph); 9/9/05 (1st and 3rd entries); 10/6/05 (1st entry); 10/7/05; 11/17/05 (entire entry); 12/20/05 (1st and 3rd entries); 12/28/05 (1st and 3rd entries); 1/25/06 (3rd and 4th entries); 2/23/06 (1st

entry); 2/24/06 (first part of entry); 3/31/06 (1st paragraph-3rd entry, 4th paragraph, 3rd entry); 5/11/06 (2nd paragraph, with the exception of the final entry which comes under the negotiations section); 6/12/06 (1st entry); 6/14/06 (2nd paragraph, 1st entry); 6/26/06; 6/28/06; 7/5/06; 7/6/06. For **TD** on 12/20/04; 1/18/05 (2nd and 3rd entries); 1/26/05; 2/7/05; 3/24/05 (1st, 2nd, 3rd entries); 5/3/05 (2nd entry); 7/21/05 (1st entry); 8/18/05 (1st and 2nd entries). For **OOW** on 1/17/05 (all entries); 3/2/05; 7/5/05.

- Writing of legal documents was included in the entries of **JPF** on 2/17/05; 2/18/05; 7/14/05 (2nd entry); 7/21/05; 8/19/05; 8/31/05; 9/1/05; 9/8/05; 10/10/05; 3/31/06 (1st paragraph- 2nd entry); 6/12/06 (2nd entry). For **OOW** on 10/27/04 (all entries); 4/15/05; 6/7/05; 6/15/05; 7/5/05. For **TD** on 2/24/05 (2nd entry); 3/24/05 (4th entry); 5/3/05 (2nd entry); 6/14/05 (all entries); 7/8/05; 8/18/05 (3rd entry).

- Negotiations and communications with opposing counsel (including letter correspondence, telephone calls, e-mails, review of voice mails and e-mails, etc..) in the entries of **JPF** on 6/2/05; 9/2/05; 10/21/05; 11/9/05; 12/5/05; 12/10/05; 12/21/05; 1/4/06; 1/20/06; 1/25/06 (2nd entry); 1/27/06; 2/23/06; 3/23/06 (2nd entry); 3/29/06 (3rd entry); 3/31/06 (1st entry, 3rd paragraph, 1st entry); 4/3/06 (3rd entry); 4/12/06; 4/25/06; 4/27/06; 4/28/06; 5/3/06; 5/4/06; 5/5/06 (entire entry, except perhaps leaving of message); 5/8/06; 5/10/06; 5/11/06; 5/15/06; 5/22/06; 5/25/06; 5/26/06. The Court in Guckenberger v. Boston University, 8 F. Supp.2d 91, 101 (D. Mass. 1998) held "[a]ll conversations with opposing counsel were considered core, as were the writing and reading of internal memoranda (because each involves independent legal thought)."

4

- Court appearance in the entries of **JPF** on 7/20/05; 2/23/06.

Plaintiffs would contend that the Plaintiffs' counsel discussions with the Plaintiffs' expert and review of the expert's reports, which were critical in determining the extent of the Defendant's violation and relied on primarily in negotiation the terms of the settlement, should be considered core work that involved independent legal thought. It was also a key document in the proceedings. Plaintiffs submit that the time required for counsel to prepare for and attend the inspection on 8/4 and 8/5/05 were critical to the discovery process and case. To consider these "non-core" would be a disservice to the very essence of this civil rights case. These entries would include the following:

- **JPF** 7/20/05 (5th entry); 8/4/05 (1st entry); 8/5/05 (1st entry); 8/18/05 (2nd entry); 8/30/05 (1st and 2nd entry); 9/1/05 (4th entry).

Plaintiffs would also contend that meetings with the Plaintiffs regarding the settlement agreement would be akin to meetings with the Plaintiffs prior to a trial and thus should be considered core tasks requiring independent legal thought. These entries would include the following:

- For **JPF** on 9/21/04; 11/8/05 (entire entry); 12/20/05 (2nd entry); 12/28/05 (2nd entry); 3/31/062nd paragraph entry); 5/10/06 (2nd paragraph).

Lastly, the Application for Fees should be considered core as it involved significant legal issues. The First Circuit held in <u>Brewster v. Dukakis</u>, 3 F.3d 488, 494 (1st Cir. 1993) that "[w]e have repeatedly held that time reasonably expended in connection with fee applications is itself compensable,...,but, since time spent in this exercise often amounts to little more than ""documenting what a lawyer did and why he or she did it,"" *Gabriele v. Southworth*, 712 F.2d 1505, 1507 (1st Cir.1983), it may fairly be compensated at a reduced rate." The Plaintiffs' counsel's Application for Fees in the case at bar clearly covered did more than document what the lawyers did

and why they did it. The Application contained important legal issues in regards to prevailing party status, the legal precedent in determining fees, costs and expert's fees and a comprehensive review of case law in the District, as well as in other federal courts [DE 36]. In Aufiero, *supra* at 196, the Court held that it reduced the hourly rate for the work entailed in an Application for Fees where the petition only raised one significant legal issue. The Application, in the case at bar, raised several significant legal issues, which required research and independent legal thought and should therefore be awarded the full rate. As such, these entries would include the following:

- For **JPF**: 6/14/06 (1st and 3rd paragraphs; 2nd entry in 2nd paragraph); 6/16/06; 6/20/06; 6/26/06; 6/28/06; 7/5/06; 7/6/06.

In reviewing Plaintiffs' counsel bill in light of the foregoing, overall there are very few items that would not be considered "core" and that did not require what the Court would consider to be independent legal thought. These mostly consist of phone calls with clients, messages to opposing counsel, and preparation of notes to the file. Plaintiffs submit that the communications between Plaintiffs, Plaintiffs' counsel, and Plaintiffs' expert is essential in an ADA case and thus should be considered "core" activity. It is the Plaintiffs experience of discrimination at the Defendant's place of public accommodation that serves as the basis of the law suit and the Plaintiffs' involvement (as well as the expert's, who documented and has knowledge of all of the pertinent violations) is critical to the law suit. The Court should consider as such. As such, these entries would include:

- For **JPF**: 9/13/04; 9/14/04; 9/15/04; 9/21/04 (1st and last entry); 6/7/05 (2nd entry); 7/19/05 (2nd entry); 7/20/05 (3rd entry; 1st entry second paragraph); 7/21/05 (last entry); 8/4/05 (last entry); 8/6/05; 8/18/05 (1st entry); 8/31/05 (last entry); 9/8/05 (last 2 entries of 1st paragraph); 9/9/05 (3rd entry and last entry on second paragraph);

10/6/05 (last entry); 11/9/05 (last entry); 3/31/06 (last entry, last paragraph).

**B.      Hourly Rates are Reasonable**

In their Application, Plaintiffs provided ample evidence of the going rate in the community

to show that the Plaintiffs' counsel rates are comparable and reasonable. For the sake of economy,

those *seven* cases will not be repeated here. Defendant points out merely two and they are, in part,

distinguishable. For example Martinez v. Hodgson, 265 F. Supp. 2d 135 (D. Mass. 2003) is a 2003

case. Plaintiffs provided evidence of more recent cases where the rates have since increased (the

2006 case of Bogan v. City of Boston, 2006 WL 1283569, *5 (D.Mass. 2006), where this Court held

that an hourly rate of $300.00 was reasonable and the 2004 case of LaPlante v. Pepe, 307 F. Supp.2d

219 (D. Mass. 2004) where this District Court found that $300.00 an hour was reasonable). Further

in Martinez, the Court awarded a junior associate $120 an hour where the Petitioners did not include

a single piece of information regarding that attorney's qualifications. The Court held that the Plaintiff

"...have manifestly failed to meet their burden of providing this Court with evidence that establishes

Lipede's skills and experience." Martinez, *supra* at 143-44. Plaintiffs have clearly met their burden

in the case at bar with respect to Attorney Dickerson and therefore the Court should not apply the

$120 an hour rate for her services and instead should apply the requested rate of $240.00. In

Magilevsky v. Bally Total Fitness Corp., 311 F. Supp. 2d 212 (D. Mass. 2004) the Court held that

$175.00 an hour was a reasonable rate for the attorney where the attorney had no real experience

litigating the issues in the case and performed all of the work (without the assistance of junior

attorneys, paralegals, etc...) himself. Clearly, the case at bar is distinguishable. In their Application,

the Plaintiffs evidenced the attorneys significant experience in ADA civil rights law. In addition, the

Plaintiffs counsel worked with a full staff, which allowed the attorneys to provided substantially all

7

legal "core" work. As such, the attorneys in the case should be awarded the hourly amounts requested in the Application.

## II.     Attorneys' Time is Reasonable and Should Be Awarded

The time reported by Plaintiffs' counsel is reasonable and should be awarded in full. The fact that the case was settled, without the need for full discovery, should not diminish the legal work performed in the case. What is significant and should be taken into account up front is the substantial time and labor expended by Plaintiff's counsels as a result of Defendant's failure to cooperate in the resolution of this lawsuit. As the Court know, the Plaintiffs have continually attempted to settle this matter but the Defendant was not willing to. In fact, at different times Defendant's counsel stated to Plaintiffs' counsel and to the Court that it hesitated settling the case because the Defendant may list the property for sale or that they might convert the property into a homeless shelter. As a result, nine months elapsed between the time the Plaintiffs offered the Defendant a proposed Settlement Agreement and when, after extensive negotiation, the Defendant signed the Settlement Agreement. The bottom line is that whether or not Defendant was going to sell or convert or do otherwise with its' property, while it was in the Defendant's possession, Defendant had an obligation to make his place of public accommodation accessible to people with disabilities and it failed to do this.

### A.     Service of the Complaint

Defendant is correct in asserting that it took Plaintiffs five months to serve the Defendant with the Complaint. However, Defendant is incorrect in stating that they had no fault in the service. The facts are set out in Plaintiffs' Motion to Re-Open Case [DE 4] and the accompanying attachments. Essentially, the Defendant is a Pennsylvania Limited Partnership but there was no registered agent for the Defendant listed in the Pennsylvania Secretary of State's records. For this

reason, Plaintiffs attempted to serve the Defendant's President Kenneth Bailen, whom refused service of the Complaint. Plaintiffs then attempted service on the address Defendant had listed as its corporate address, a law firm, who also refused service and claimed to have no knowledge of the Defendant. As a result of Defendant's refusal of service, on April 8, 2005 the Court had not choice but to dismiss this action due to Plaintiffs' inability to effect service [DE 3]. On March 31, 2005, Plaintiffs were eventually able to locate Defendant's registered agent, who accepted service, in Boston, Massachusetts. The Court granted Plaintiffs Motion to Re-Open the Case on May 17, 2005. By playing a game of cat and mouse and listing incorrectly the information provided to the Pennsylvania Secretary of State, the Defendant did indeed have a role in delaying Plaintiffs ability to serve the Defendant. For these reasons, all of the Plaintiffs' time expended on service, responding to the Court's dismissal and on the Plaintiffs' Motion to Re-Open should be awarded.

### B.    Messages for Defense Counsel

Plaintiffs' counsel repeatedly left messages for Defendant's counsel in an attempt to resolve the case at bar and as a result of Defendant's counsel refusal to respond to Plaintiffs' counsel's calls. Plaintiffs submit to the opinion with <u>Alfonso</u>, but respectfully disagree. Plaintiffs submit that 12 minutes is a reasonable time to leave a message to opposing counsel, for this includes reviewing the file prior to the telephone call and documenting the call afterwards. In addition, the messages presumably were detailed and provided opposing counsel with necessary legal information. This time should not be disregarded as is it documented in the time records properly and was a legitimate piece of Plaintiffs' counsel's representation.

### C.    Travel Time

Attorney Fuller's travel time on 8/5/05 is fully awardable. Defendant cites to <u>Gluckenberg</u>,

9

*supra*, to deny Attorney Fuller his fees. However, the case is distinguishable. In <u>Gluckenberg</u> at 102, the Court disallowed travel time primarily because no specific legal work was recorded. In the case at bar, the time record reveals that Attorney Fuller traveled to and attended a property inspection. As the Court and opposing counsel knows, this was a Rule 34 inspection conducted as part of Plaintiffs' discovery, clearly specific legal work. Attendance by counsel at the property inspection is probably the most important event in a Title III ADA case, and allows the attorney to observe firsthand all of the alleged violations in reference to the property as a whole, without looking at abstract photographs selected by the expert. To accomplish this, Attorney Fuller rented a car, picked up the expert, attended the inspection, returned the expert and the car. Certainly, 4.2 hours is not an inordinate amount of time for these tasks. Plaintiffs also submit that the entry "traveling to and attendance at property inspection" properly depicts the work performed.

Attorney Fuller is a well-known ADA litigation attorney. He was hired by the Plaintiffs for his skill, expertise and experience. Attorney Fuller is paid on a contingency basis and it certainly is not easy for a Plaintiff to find an attorney with Attorney Fuller's experience willing to take an ADA case on a contingency basis. Essentially, there is great risk for an attorney to take a case on this basis and there is the accompanying delay in payment. The First Circuit understands this issue and has held that they will take into account delays in payment when determining fee awards. <u>Cordero v. De Jesus-Mendez</u>, 922 F.2nd 11, 19 (1st Cir. 1990); <u>Furtado v. Bishop</u>, 635 F.2d. 915, 920 (1st Cir. 1980). As such, Plaintiffs' counsel should not be penalized for representing the Plaintiffs at a key discovery proceeding, simply because he is from Florida.

### D.    Communication with Various Parties

Plaintiffs submit that the term "client" is sufficiently detailed to access the reasonableness

of the communication to the Plaintiffs' client. Plaintiffs also submit that "Access-Ability" and "Mr. Baez" are sufficiently detailed in that these experts were made known to the Defendant and the Court in the September 1, 2005 Plaintiffs' Amended Rule 26(a)(2) Expert Witness Disclosure [DE 25].

### E.    Attorney Fuller Time Not Excessive

Plaintiffs submit that the 5.3 hours spent on January 25 and February 23, 2006 were reasonable in preparation for a status conference. Considering that the case spanned over a year and many settlement negotiations had been attempted, is not unreasonable for an attorney to spend an approximate five hours preparing for a pre-trial conference. In addition, the 4.5 hours claimed on January 25, 2006 include time for telephone calls made to Defendant's counsel, as well as a review of correspondence from Defendant's counsel.

Plaintiffs submit that the time spend on August 31, 2005 and September 1, 2005 are similarly reasonable in light of the work being performed. Four hours to prepare an initial draft of a settlement agreement that may resolve over a year of litigation is not a lot of time. In addition, the August 31, 2005 entry also included a phone call with the client. Further, 3.8 hours spent preparing litigation documents including: a notice of deposition, an updated expert witness disclosure form, a stipulation for policies and procedures, a stipulation for costs & fees, a stipulation for dismissal and a proposed final order is certainly reasonable given the amount of work performed. This September 1, 2005 entry also included modifying the settlement agreement, reviewing the expert's proposed policies and procedures and drafting a letter to Defendant's counsel. Plaintiffs submit that any other attorney performing this amount of work would have certainly billed far more time. Due to the Plaintiffs' counsel experience and skill, they were able to perform the work in the short amount of time. Defendant provides no basis as to why the work performed should have taken less time.

Lastly, the fourteen hours spent on the Plaintiffs' Application for Fees and Costs is also reasonable. Certainly a less experienced attorney who had not filed many similar applications would have taken far longer to complete the comprehensive Application. The Application was tailored and drafted particularly for the case at bar. As stated earlier, the Application, contained important legal issues in regards to prevailing party status, the legal precedent in determining fees, costs and expert's fees and a comprehensive review of case law in the District, as well as in other federal courts [DE 36]. See Brewster v. Dukakis 3 F.3d 488 (1st Cir. 1993)(the Court awarded the full amount of fees requested --at least 31.6 hours); Alfiero, *supra* at 196 (used the full amount of time claimed for fee petitions in applying its equation).

**III.     Costs are Reasonable and Should Be Awarded**

      **A.     Open/Close File Charge**

The administrative open/close file charge is a reasonable amount of money for Plaintiffs' counsel's office to create, maintain, work with, and store the file.

      **B.     Title Search was Necessary**

As to the Defendant's contest of Plaintiffs' title search charge, the Plaintiffs respectfully submit that the title search was necessary and proper. This is a cost typically awarded to the prevailing party in a civil rights case. *See* Plaintiffs' Application for Fees citing authority [DE 37, pg. 11]. As part of their Rule 11 duty, Plaintiffs' counsel had every right and necessity to perform a complete and proper title search of the Defendant's property in the manner they considered efficient and efficacious and were not required to use a county service. As such these fees should be awarded.

      **C.     Reinspection Fee is Necessary**

12

The reinspection fee is for the reinspection contemplated after the Defendant completes the repairs of the existing barriers to access, to confirm that the ADA violations have been corrected. Reinspection fees have been permitted in many cases. *See* <u>Access 4 All, Inc. v. Business Consultants International Conf.</u>, No. 02-21482 (S.D. Fla. 2003) (**Exhibit 1**);   <u>Access for America, Inc. v. Oakwood Center, L.C.</u>, Case No. 8:02-cv-464-T-30 MSS (M.D. Fla. 2003) (**Exhibit 2**). Defendant states that "[i]f Delancy does not comply with the terms of the settlement agreement, Plaintiffs may make a filing with the Court and seek relief as appropriate." Defendant misses the point that the Plaintiffs will need to conduct the reinspection to ensure that the Defendant has complied with the terms of the settlement agreement. Clearly, if Plaintiffs determine that Defendant has not complied, Plaintiffs will file a Motion to Enforce the Settlement Agreement with the Court, but that is wholly another issue. The First Circuit <u>Garrity v. Sununu</u>, 752 F.2d 727, 738-9 (1st Cir. 1984) permitted fees for the post-judgment monitoring of a Consent Decree holding "...relief would occur more speedily and reliably if the monitoring...occurred, and that this was a necessary aspect of plaintiffs 'prevailing' in the case."

**D.     Pre-Complaint Expert Fee is Necessary**

Plaintiffs had a Rule 11 duty to substantiate their claims of action in the case at bar and the September 2004 pre-complaint expert inspection provided this. This pre-complaint expert inspection was in no way duplicative of the full-scale comprehensive Rule 34 inspection that occurred in August 2005. A pre-suit investigation is naturally not going to be as comprehensive and detailed as one performed under the rules of discovery (Fed.R.Civ.P. 34). To comply with Fed.R.Civ.P 11, a pre-suit investigation is intended only to show that "the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after

13

a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P 11. The pre-complaint inspection accomplished this. The comprehensive Rule 34 inspection provided a much clearer picture of all of the violations at the Defendant's property and served as the basis for the eventual settlement agreement. For these reasons, both expert inspection fees should be awarded.

### E.    Photocopying, Telephone, Courier, Postage and Fax Should Be Awarded

As to the Defendant's contest of Plaintiffs' entries for multiple telephone, postage, long distance faxing and courier service charges, the Plaintiffs submit the charges were necessary and reasonable. These charges are part of the regular course of litigation and involve the multitude of correspondence and document drafting and filing that occurred in this case. Defendant claims that many of Plaintiffs charges are not sufficient enough to be reimbursed. Plaintiffs contend that they provided enough information in the bill and accompanying Application for Fees to make clear to the Court that the charges were necessary. Lastly, Plaintiffs submit that the charges that the Defendant contests are minimal in light of the litigation's length and necessity to perform the litigation duties.

### F.    Pro Hac Vice Filing Fees

Plaintiffs submit that they should be awarded *pro hac vice* admission fees for John Fuller and Tracie Dickerson. The *pro hac vice* fees are part of the cost of litigating ADA claims in the federal courts of Massachusetts. Each of the attorneys in the case performed distinct, valuable and reasonable work and were part of the entire litigation team. As such, these fees are completely reasonable and should be awarded. Defendant cites to no precedent suggesting that these fees should not be awarded.

### G.    Expert Fees Not Excessive

As the Plaintiffs' expert, Pablo Baez was able to provide the proper guidance to the undersigned

law firm, to the Court, and to the Defendant in order to bring the facility into compliance with the ADA. The Plaintiffs' expert reports are exhibits to the Plaintiffs' Application For Fees [DE 36]. Those reports were comprehensive and served as the basis for the settlement agreement in the case. Mr. Baez' hourly rate or the hours spent on his comprehensive and detailed expert reports are reasonable. Contrary to Defendant's contention, Mr. Baez performs the same services as expert Herbert Neff, under whom he trained, and should be paid similarly. Mr. Baez has years of experience and has performed hundreds of inspections. His resume attached to Plaintiffs' Application for Fees [DE 36] highlights a number of those properties. Defendant does not have the expertise and knowledge to question the amount of time Mr. Baez spent on inspecting the property or preparing his report. Defendant also does not have the knowledge to state that the expert did not need to speak with Plaintiff or Plaintiffs' counsel, those who hired him to perform the inspection. As such, Pablo Baez' entire fee should be awarded. The travel expenses for Mr. Baez are compensable and should be awarded. Plaintiffs' counsel has verified the application for fees and no further receipts are required for these expenses. Lodging was required for the expert. Plaintiffs submit that Defendant can not benefit from the work of the expert (namely the final settlement agreement) and then refuse to pay him for his work or expenses. As stated in the Plaintiffs' Application for Fees, the Court in Guckenberger, *supra*, at 111-112 held that the Civil Rights Act of 1991 made explicit that attorneys fees should be awarded if the Court deems them reasonable. In the case at bar, they are reasonable.

### H.    Attorney Airfare for Inspection

Attorney Fuller charged the Defendant a pro-rata share of his airfare in the amount of $118.00 in order to share the costs of his travel between his two clients. This is a reasonable and legitimate expense that should be awarded.

### IV.    Conclusion

As stated in the Plaintiffs' Application, the Supreme Court has held that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. Hensley, supra, at 436; Farrar v. Hobby, 506 US 103, 114 (1992). See also Aufiero, supra at 199, Pearson v. Fair, 980 F.2d 37 (1st Cir. 1992). In this case, the Plaintiffs' achieved a great success, and one that will permit the Plaintiffs, and other disabled individuals, the full enjoyment of the use of the Defendant's place of public accommodation as is required under the law. In addition, as stated in their Application, in assessing attorneys' fee under the ADA, the Court must consider the benefits to the public as a whole attained as a result of the civil rights action. In Villano v. Boynton Beach, 254 F.3d 1302, 1306 (11th Cir. 2001) the Court held that a "successful civil rights actions vindicate a public interest ...[and]...[p]ublic benefit is a distinct measure of success in civil rights actions and ... a court must account for that distinct measure of success when calculating an award of fees and costs." As required under the law, Plaintiffs respectfully request that the Court give proper weight to the foregoing Response, the great success achieved in the litigation and the public interests that were vindicated for the Plaintiffs and disabled persons as a result of this litigation.

Respectfully submitted,

_____/s/John P. Fuller_____

JOHN P. FULLER, Esq., pro hac vice
FL Bar No. 0276847
**FULLER, FULLER & ASSOCIATES, P.A.**
12000 Biscayne Blvd., Suite 609
North Miami, FL 33181
Tel. 305-891-5199; Fax 305-893-9505
Email: ffa@fullerfuller.com

16

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to Michael Colgan Harrington, Esq., Murtha Cullina, LLP,185 Asylum Street, CityPlace I, Hartford, CT 06103 on this 23 day of August 2006.


_____/s/John P. Fuller_____

JOHN P. FULLER, Esq., pro hac vice

17

02-21482.oa



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 02-21482-CIV-UNGARO-BENAGES/BROWN

ACCESS 4 ALL, INC.,
a Florida Not for Profit corporation,
MARTIN MARCUS, individually,
and PETER DI PALMA, individually,

      Plaintiffs,

v.

BUSINESS CONSULTANTS
INTERNATIONALE CORP., a Florida
corporation,

      Defendant.

_____/

## ORDER ON VERIFIED APPLICATION FOR ATTORNEY'S FEES, EXPERT FEES, LITIGATION EXPENSES AND COSTS

THIS MATTER is before the Court on Plaintiffs' Verified Application ("Motion") for

Attorney's Fees, Expert Fees, Litigation Expenses and Costs and Incorporated Memorandum of Law,

filed November 15, 2002. The Court has considered the Motion, the Response, the Reply, and all

pertinent materials in the file.

### BACKGROUND

Plaintiffs filed this action against Defendant under the auspices of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.* On October 16, 2002, the Court entered a Final

Consent Decree wherein the Court ordered that attorneys' fees, expert fees, litigation expenses, and

1

EXHIBIT
1

costs shall be taxed upon proper motion.[1]

## DISCUSSION

### I. Entitlement to an Award of Attorneys' Fees Pursuant to 42 U.S.C. § 12205

The Court, using its discretion, may allow the prevailing party a reasonable attorney's fee in an ADA case. 42 U.S.C. § 12205. A review of the ADA's legislative history makes it clear that Congress intended that Congress intended § 12205 to be "interpreted in a manner consistent with the Civil Rights Attorney's Fees Act," 42 U.S.C. § 1988, "including the statute's definition of prevailing party, as construed by the Supreme Court." Webb v. James, 967 F. Supp. 320, 322 (N.D. Ill. 1997) (quoting H.R. REP. No. 101-485, 101st Cong., 2d Sess., pt. 3, at 73 (1990)). A party can collect attorney's fees under 42 U.S.C. § 1988 (and § 12205), provided that the party demonstrates that it is the prevailing party, and that its fee request is reasonable. See id. at 322 (citing Farrar v. Hobby, 506 U.S. 103, 109-114 (1992)).

In this case, the issue of "prevailing party" is moot as the Consent Decree specifically provides that Plaintiffs are entitled to fees upon proper motion.

### II. Determination of Attorneys' Fees

The District Court has the ultimate discretion in determining whether or not a party to a case should receive an award of fees. See Cullens v. Georgia Dept. Of Transp., 29 F.3d 1489, 1491 (11th Cir. 1994) (quoting 42 U.S.C. § 2000e- 5(k)). Any fees to be awarded must be reasonable and follow the guidelines the Eleventh Circuit has promulgated. See, e.g., Norman v. Housing Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988). It is the prevailing party's burden to justify the

---

[1]The parties in this case have consented to this Court resolving this dispositive motion pursuant to Paragraph 2 of the Consent Order, as referred by the District Judge.

requested fees. <u>Duckworth v. Whisenant</u>, 97 F.3d 1393, 1306 (11th Cir. 1996); <u>see also</u>, <u>e.g.</u>, <u>Loranger v. Stierheim</u>, 10 F.3d 776, 781 (11th Cir. 1994). However, the Court itself can be an expert on the question of fees and may properly consider its own knowledge and experience in determining reasonable and proper fees. <u>Loranger</u>, 10 F.3d at 781 (citing <u>Norman</u>, 836 F.2d at 1303). Additionally, it is also within the Court's discretion to adjust the fees to an amount it deems proper. <u>See</u>, <u>e.g.</u>, <u>Columbus Mills, Inc. v. Freeland</u>, 918 F.2d 1575, 1580 (11th Cir. 1990).

The standards to be applied in determining reasonable attorney's fees are enunciated in <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983).[2] The Court noted that the "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Id</u>. at 433. This is referred to as the "lodestar" method, which has been adopted by the Eleventh Circuit as the proper method to calculate fee awards in federal statutory fee-shifting cases. <u>See</u>, <u>e.g.</u>, <u>Duckworth</u>, 97 F.3d at 1396; <u>Loranger</u>, 10 F.3d at 781.

Before discussing the calculation of attorneys' fees, Defendant argues, *inter alia*, that the Court should deny attorneys' fees because Plaintiffs have failed to comply with Local Rule 7.3 for the United States District Court, Southern District of Florida, which requires that a party seeking attorney's fees shall within 3 days of filing its Motion, file a statement certifying that they have conferred with opposing counsel to resolve the matter, report the results of the conference and whether a hearing is requested. The Court rejects this argument. First, the cases cited by Defendant in support of its position fail to hold that Plaintiffs who fail to file a statement certifying that they

---

[2]Although <u>Hensley</u> involved attorney's fees under 42 U.S.C. § 1988, the U.S. Supreme Court stated that "[t]he standards set forth in [Hensley] are generally applicable in *all cases* in which Congress has authorized an award of fees to a 'prevailing party.'" <u>Hensley</u>, 461 U.S. at 433 n.7 (emphasis added).

have conferred with opposing counsel within 3 days of filing the Motion for Attorney's Fees should

not be awarded attorney's fees. See Zaklama, M.D. v. Mount Sinai Medical Center, 906 F.2d 645

(11th Cir. 1990); Pesin v. Rodriguez, 244 F.3d 1250 (11th Cir. 2001). Rather, Zaklama and Pesin

refer to the failure to serve and file a motion for attorneys' fees within 30 days of entry of final

judgment. The 30 day time requirement of Local Rule 7.3 was not violated by the Plaintiffs. The

Final Order Approving and Entering Consent Decree and Reference to U.S. Magistrate Judge Brown

was signed and dated on October 16, 2002, and the Plaintiffs filed their Application for Attorney's

Fees on November 15, 2002.

Second, the Plaintiffs' error of failing to file the certificate is harmless. Both before and after

Mediation, the Plaintiffs tried to resolve the issue of fees, costs, and expert fees. At Mediation, both

parties agreed that the issue of entitlement and the amount of attorneys' fees, litigation expenses, etc.

was to be determined by the Court. Subsequently, the Defendant made alterations to the Consent

Decree before it was submitted to the Honorable Ursula Ungaro-Benages, who issued a Final Order

approving the Consent Decree and referred the matter of Plaintiffs' entitlement to and, if applicable,

the amount of, attorneys' fees and costs to the undersigned. Therefore, the failure to submit a

statement within three days stating that the Plaintiffs had conferred with the Defendant to resolve

the matter, the results of the conference, and whether a hearing is requested is harmless because the

Defendant had agreed that the Court would determine the entitlement and, if applicable, the amount

to be awarded by agreeing to the Consent Decree.

Alternatively, the Defendant requests that a hearing be held on Plaintiffs' Motion because

it is their position that the fees and costs sought "are far in excess of what Plaintiff is entitled to

given the limited work that was done in this case." The Court rejects this position for two reasons.

4

First, a "request for attorney's fees should not result in a second major litigation." <u>Hensley</u>, 461 U.S.

at 437. The Defendant's request for a second hearing would require more litigation on the behalf

of both parties. Second, the District Court is given discretion in determining the amount of fee

award. <u>Id.</u>

## A. Calculating the Reasonable Hourly Rate

Factors to be considered when setting an hourly rate include the time and labor required,

novelty and difficulty of the issues, skill required, preclusion of other employment, customary fee,

whether the fee is fixed or contingent, time limitations, results obtained, attorney experience, and

awards in similar cases. <u>See Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-719 (5th

Cir. 1974). The most critical factor is the prevalent rate in the community. <u>Martin v. University of</u>

<u>S. Alabama</u>, 911 F.2d 604, 610 (11th Cir. 1990).[3]

Plaintiffs have been represented by Lawrence A. Fuller ("LAF") and John P. Fuller ("JBF")

of Fuller, Fuller & Associates, P.A. This law firm has filed and litigated over 100 ADA Title III

cases. Both of the Plaintiffs' attorneys seek an hourly rate of $290.00.

### 1. Attorney Background

Lawrence A. Fuller received his undergraduate degree from Boston University and his Doctor

of Jurisprudence from the University of Miami. LAF was admitted to practice law in Florida in 1974

and is also admitted to the following courts: United States Southern, Middle, and Northern Districts

of Florida, and the United States Court of Appeals for the Fifth and Eleventh Circuits. LAF has been

a partner in three different law firms and has received an AV rating. LAF claims to have spent 14.20

---

[3]The U.S. Supreme Court has declared that the lodestar method as calculated in <u>Hensley</u> presumptively includes all of the twelve factors derived from the ABA Code of Professional Responsibility DR 2-106 (1980) and adopted in <u>Johnson</u>. <u>Norman</u>, 836 F.2d at 1298-1299.

hours and seeks a total of $4,118.00 in fees.

John P. Fuller received his undergraduate degree from the University of Florida and his Doctor of Jurisprudence from Nova University School of Law. JPF was admitted to practice law in Florida in 1979, and is also admitted to the following courts: United States Southern and Middle Districts of Florida and the United States Eleventh Circuit Court of Appeals. Additionally, JPF has been a partner in three different law firms, and has served as of counsel to one firm. JPF claims to have spent 23.50 hours on the case and seeks a total of $6,815.00 in fees.

**2. Reasonable Rate**

Both Lawrence Fuller and John Fuller have recently received fee awards based on the recommendations of this Court. See Access 4 All, Inc. v. Harold J. Newburn, Case No. 01-3755-CIV-JORDAN/BANDSTRA (S.D. Fla. Nov. 25, 2002); Association for Disabled Ams., Inc. v. Varadero Invs., Inc., Case No. 01-3280-CIV-HUCK/BROWN (S.D. Fla. May 9, 2002); Advocates for the Disabled, Inc. v. Cotillion Invs., Inc., Case No. 00-8391-CIV-UNGARO-BENAGES/BROWN (S.D. Fla. May 3, 3003). Based upon the reasons provided in Newburn, Varadero, and Cotillion (i.e., significant legal experience, held partnerships in various law firms, firm in which he is currently employed has litigated over 100 Title III ADA cases), the Court orders that LAF receive the requested hourly rate of $290.00, which is fair, reasonable, and reflects the prevailing market rate. The Court has previously awarded JPF an hourly rate of $250.00. Notwithstanding the lack of objection, the Court as an expert on the question of fees, believes that this rate is fair, reasonable, relates to his experience, and reflects the prevailing market rate. Accordingly, the Court will award JPF an hourly rate of $250.00 at this time.

## B. Calculating the Reasonable Number of Hours Expended

The Eleventh Circuit requires proof of the hours spent on litigation. See Duckworth, 97 F.3d at 1397. Where there is a lack of documentation or testimonial support for the hours expended the court may make the award based on its own experience. Loranger, 10 F.3d at 781 (citing Norman, 836 F.2d at 1303). The fee applicant bears the burden of demonstrating entitlement to the number of hours reasonably expended. See Norman, 836 F.2d at 1303. Counsel for the prevailing party should exercise billing judgment, that is, make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. Id. at 1301 (citing Hensley, 461 U.S. at 434); see also Gray v. Lockheed Aeronautical Sys. Co., 125 F.3d 1387, 1389 (11th Cir. 1997).

Plaintiffs' submitted time sheets describe in detail the work performed by Plaintiffs' attorneys. These time sheets generally evidence the attorneys' good faith effort to exercise billing judgment. After reviewing the time entries recorded on the time sheets, the Court orders that Plaintiffs are entitled to reimbursement for 33.70 hours as explained below.

Lawrence Fuller, Plaintiffs' lead attorney in this case, claims to have expended 14.20 hours. The Court finds that some of his claimed time was excessive in relation to the task performed, thereby warranting adjustments in the following entries: 5/22/02, 6/11/02, 8/14/02. The 10/23/02 entry of 3.90 hours claimed for preparing the application for fees and costs, phone call(s) with Ms. Durbin, phone call(s) with client shall be reduced to 2.00 hours. Plaintiffs have filed numerous motions for fees in this type of case and have already done most, if not all of the research for same. Moreover, the Court orders that the .40 hour claimed for reviewing the letter dated 8-2-02 from opposing counsel and reviewing notice of taking deposition be reduced to .20 hour. Also, the Court

7

disallows the .20 for reviewing Defendant's Unopposed Motion for Extension of Time to Respond to Complaint. Attorney John Fuller performed both these same or similar tasks and therefore, the time expended on these tasks (as it relates to LAF) should not be recoverable. The Court also disallows the .30 hour claimed for "mediation fax to opposing counsel" as this is a clerical task. <u>See</u> <u>Webb</u>, 967 F. Supp. at 324; <u>see also</u> <u>Castle v. Bentsen</u>, 872 F. Supp. 1062, 1067 (D.D.C. 1995) (declining to award fees for clerical tasks under 42 U.S.C. § 2000e-5(k)). Accordingly, the Court awards attorney Lawrence A. Fuller 10.8 hours.

Attorney John P. Fuller claim to have expended 23.50 hours. The Court orders that the entries on 7/22/02, 8/14/02 and 10/3/02 be reduced slightly because they involve fax transmittals, which are clerical tasks. The order disallows the entry on 9/11/02 for the same reason. <u>See</u> <u>Webb</u>, 967 F. Supp. at 324; <u>see also</u> <u>Castle</u>, 872 F. Supp. at 1067. Therefore, the Court orders awarding attorney J. Fuller 22.90 hours.

Accordingly, the Court orders an attorneys' fee award in the amount of $8,917.00.[4]

### III. Expert Fees and Litigation Costs

The ADA gives the Court statutory authority to use its discretion in awarding costs to the prevailing party. <u>See</u> 42 U.S.C. § 12205; <u>see also</u> <u>Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Resources</u>, 532 U.S. 598, 624, n.1 (2001). Pursuant to § 12205, costs of litigation are recoverable by the prevailing party insofar as they are reasonable. In addition, the ADA provides plaintiffs with "[t]he powers, remedies, and procedures set forth in . . . 42 U.S.C. §

---

[4] There is an additional $60.00 claimed for a paralegal, which is awarded.

2000e-5." See 42 U.S.C. § 12217. Section 2000e-5(k) states that "[i]n any action or proceeding under this title, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorneys fee (including expert fees) as part of the costs." See id. § 2000e-5 (emphasis added); see also Hall v. Claussen, Nos. 98-1150, 98-1384, 2001 WL 219088 (10th Cir. March 6, 2001). Expert fees, moreover, are not limited by 28 U.S.C. §§ 1920 and 1821 in an ADA case. See Lovell v. Chandler, 303 F.3d 1039 (9th Cir. 2002); see also Dowdell v. City of Apopka, 698 F.2d 1181, 1188-1189 (11th Cir. 1983) (stating that Federal Rule of Civil Procedure 54(d) and 28 U.S.C. §§ 1920 and 1923(a) are inapplicable where cost-shifting is expressly authorized by statute). However, it is the burden of the prevailing party to submit a request for expenses that would enable the Court to determine what expenses were incurred and whether the prevailing party is entitled to them. Lee v. American Eagle Airlines, Inc., 93 F. Supp. 2d 1322, 1335 (S.D. Fla. 2000).

Plaintiffs request expert fees due to the involvement of A.D.A. Investigations, Inc. (Carol Durbin, President). Ms. Durbin has attended numerous ADA seminars and classes, primarily in the last two years. It is clear that she is an expert regarding the issues in this case. Ms. Durbin claims to have expended 12.50 hours inspecting Defendant's property and in follow-up activity related to the property's noncompliance with the ADA. Ms. Durbin charged Plaintiffs $150.00 per hour, for a total amount of $1,885.00.

In Varadero and Newburn, the Court recommended that Ms. Durbin's services were recoverable at an hourly rate of $125.00. Upon consideration of all relevant evidence, including the detailed record of Ms. Durbin's hours, the Court finds that an hourly rate of $125.00 is fair and the hours claimed are generally reasonable. However, one time entry is for "Verification of Property

9

Identification and Owner, with Secretary of State..." The same (or similar) work was done by attorney John Fuller on May 5, 2002. Therefore, the Court will deduct the one-half (½) hour claimed for this task. Accordingly, the Court awards expert fees in the amount of $1,500.00.

Other costs and expenses in this matter are claimed to be $1,050.31 for a mediation conference, re-inspection fee, photocopies, postage, filing fees, service of process, title search and faxing charges. The Eleventh Circuit traditionally takes a liberal approach when reimbursing attorney expenses. Lee, 93 F. Supp. 2d at 1335; see also Dowdell, 698 F.2d at 1190, n.13; Mallory v. Harkness, 923 F. Supp. 1546, 1557 (S.D. Fla. 1996). However, as stated above, it is incumbent upon the prevailing party to demonstrate to the Court that the costs incurred are reasonable and that they are related to the instant action. Lee, 93 F. Supp. 2d at 1336. In Lee, the District Court disallowed costs for photocopies, telephone and fax charges because the entries relating to those charges were "wholly devoid of explanation." Id. at 1335-1336. Furthermore, the Eleventh Circuit has declined to tax costs where the entries lacked sufficient particularity that would allow the Court to determine the reasonableness of the costs. Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001); see also Cullens, 29 F.3d at 1494 (disallowing photocopying costs where plaintiffs did not present evidence regarding the documents copied including their use or intended use); Lang v. Reedy Creek Improvement Dist., Case No. 1997 WL 809200 (M.D. Fla. Dec. 23, 1997); Drury v. Pena, Case No. 1997 WL 718831 (M.D. Fla. Oct. 15, 1997) (telephone charges not taxed where the prevailing party failed to provide information about the calls to allow the court to determine the calls' reasonableness).

Here, the generalized cost entries submitted by Plaintiffs relating to photocopies, telephone and fax charges provide no basis on which the Court can determine whether these costs were

reasonable or whether these costs were related to this case. Therefore, the Court disallows the $152.36 claimed for photocopies, telephone and fax charges. The Court allows the costs claimed for filing fees, service fees, re-inspection fee, title search, and postage in the amount of $493.95. With regards to the $404.00 claimed for mediators bill, it is not provided for under 28 U.S.C. §1920. See also McKenzie v. EAP Management Corp., Case No. 1999 WL 1427707 (S.D. Fla. 1999). Accordingly, the Court allows costs and expenses in the amount of $493.95.

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Verified Application for Attorneys' Fees and Costs be **GRANTED** in the sum of $10,910.95, as follows:.

1. Attorneys' Fees
   Lawrence A. Fuller        $3,132.00
   John P. Fuller             5,725.00
   Paralegal Fee                 60.00
                      Total  $8,917.00

2. Expert Fees               $1,500.00

3. Costs                     $  493.95

                      Total  $10,910.95

DONE and ORDERED this 28th day of January, 2003 at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc:    Honorable Ursula Ungaro-Benages
       Jared L. Gamberg, Esq. [fax: (305) 444-4469]
       Lawrence A. Fuller, Esq. [fax (305) 534-9894]

11

RECORDED
· JUL 2 8 2003
02-cv-3242

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ACCESS FOR AMERICA, INC.,** a Florida
not for profit corporation, **DOUG WILDER,**
individually,

        **Plaintiff,**

v.

        **Case No. 8:02-cv-464-T-30MSS**

**OAKWOOD CENTER, L.C.,** a Florida
limited liability company,

        **Defendant.**

---

## ORDER

THIS CAUSE comes before the Court upon the Parties Stipulated Agreement for Fees and Costs which was filed *in camera* for the Court's review. Upon request by the Court, Plaintiffs filed a breakdown of fees and costs used to prepare the stipulation. After reviewing the stipulation and breakdown, the Court hereby allows a total of $7,667.50 in legal fees, $478.68 in costs, $250.00 re-inspection fee and $1950.00 in expert fees for total fees and expenses in the amount of $10,346.18.

**DONE** and **ORDERED** in Tampa, Florida on this _22_ day of July, 2003.

                _James S. Moody_
                JAMES S. MOODY, JR.
                UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record



EXHIBIT
2

S:\Even\2002\02-cv-464.adafees.wpd